IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN
AND FOR PALM BEACH COUNTY,
FLORIDA

Alexander Peklun, as Personal
Representative of the Estate of
Sergey Peklun, deceased, and
Viktoria Peklun, individually,

        Case No: 50 2014 CA 015280 XXXX
        MB

        Plaintiffs,

vs.

Tierra Del Mar Condominium
Association, Inc. and Maria Verduce,

        Defendants.

_____/

### FIRST AMENDED COMPLAINT

Plaintiff, Alexander Peklun, as personal representative of the Estate of Sergey

Peklun, deceased, sues Defendants, Tierra Del Mar Condominium Association, stating:

### PRELIMINARY ALLEGATIONS APPLICABLE TO ALL COUNTS

1.    This is a cause of action for damages in excess of $15,000.00.

2.    All conditions precedent to filing this action have been complied with,

excused, expired or waived.

3.    All acts or omissions complained of herein occurred in Palm Beach

County, Florida.

4.    Alexander Peklun is the duly appointed personal Representative of the

Estate of his deceased father, Sergey Peklun. Copies of the Letters Of Administration

and Order Appointing Personal Representative are attached.

5.    Sergey Peklun died on February 12, 2015. At that time, and for the

preceding twenty five years, he was lawfully married to Viktoria Peklun.

# EXHIBIT A

6.    Sergey Peklun's survivors, as defined in section 768.18 of Florida's Wrongful Death Act, are his estate and his surviving spouse, Viktoria Peklun.

7.    The Defendant, Tierra Del Mar Condominium Association, Inc., hereinafter also referred to as "TDM," is a Florida corporation located at 1111 South Ocean Boulevard in Boca Raton, Palm Beach County, Florida.

8.    The Defendant, Maria Verduce, is a resident of Palm Beach County and is otherwise sui juris. At all times material hereto, Ms. Verduce was a member of TDM's Board of Directors, and at times served as its treasurer and then as its president. During her tenure on the board, Ms. Verduce was personally involved in the acts and omissions described herein. As such, each reference to TDM herein also applies to and includes Defendant, MARIA VERDUCE.

9.    At the time of Sergey Peklun's death, and at all times pertinent hereto, Sergey Peklun was lawfully married to his wife, Viktoria Peklun.  Together they owned and resided in condominium unit #319 located within the Tierra Del Mar Condominiums.

10.    At all times material hereto, the defendant TDM acted by and through its board, including its directors and officers, for whose negligence the Board is legally responsible.

11.    At the time of his death, and at all times pertinent hereto, Sergey Peklun was permanently and totally disabled. The problems that led to his disability and failing health are believed to have begun when he was exposed to radiation immediately following the Chernobyl nuclear disaster while helping to evacuate residents from the surrounding area.

12.   Sergey Peklun's was disabled due to multiple medical and psychological conditions, including heart disease, lung disease, high blood pressure, kidney disease, sleep disturbances and apnea, anxiety and depression.

## COUNT I – NEGLIGENCE – WRONGFUL DEATH

All preliminary allegations are re-asserted and in addition, Plaintiff alleges:

13.   In 2011, Sergey Peklun adopted a hypoallergenic mixed breed Maltese/Yorkshire Terrier ("Morkie") named Julia. Julia assisted Mr. Peklun on a daily basis, including waking him when he stopped breathing in his sleep. Julia's presence and her services, attentions, comfort and love were invaluable to Mr. Peklun in controlling, or at least limiting, his depression and stress. She was, in short, essential to his physical and emotional well-being, his will to live and his enjoyment and use of his dwelling. Defendant knew this, or should have known it.

14.   On or about July 29, 2011, Sergey Peklun applied to the Board of TDM for a reasonable accommodation to allow him to keep Julia in his condominium unit as an Emotional Support Animal. He delivered a handwritten letter, accompanied by a doctor's note, advising, "I am going thru a lot of medical problems. My doctor recommended a pet as help for emotional support and healing therapy."

15.   Mr. Peklun's application was well supported by medical evidence showing that Julia was exceptionally well suited to his medical and emotional needs and represented a vital component of his physical and emotional health and well-being.

16.   In a letter dated August 31, 2011, the board, through its attorney, acknowledged receipt of Mr. Peklun's reasonable accommodation request and

supporting doctor's letter. Additional documentation was requested and Mr. Peklun provided it. His doctors were contacted and they confirmed these facts.

17.     Through this process, the defendant learned that Julia was essential to Mr. Peklun's physical and emotional well-being, and that he was in great danger of falling into despair should he be deprived of her services, her comfort, her love and her attention.

18.     In the fall of 2011, the Board of TDM granted Mr. Peklun a reasonable accommodation which allowed Julia to live with him in his condominium unit, TDM's no-pet rule notwithstanding.

19.     For reasons particular to TDM's own interests, perhaps to avoid encouraging other residents to seek similar accommodations, TDM did not publish, record or document the fact that it had granted Mr. Peklun's accommodation request. Nonetheless, members of its board, including its officers, became aware in 2011 of the granting of the reasonable accommodation and the invaluable and essential services it permitted Julia to provide to Mr. Peklun. However, in subsequent years, the composition of the board changed and the management company employed by TDM changed. As a result, confusion arose with TDM as to whether Sergey Peklun was entitled to have Julia live with him. This confusion persisted in 2013, 2014 and 2015 and resulted in the tragic consequences complained of herein.

20.     At all times material hereto, TDM had a legal duty to document, confirm and honor the reasonable accommodation it first extended to Mr. Peklun in 2011, to do nothing to jeopardize that accommodation and to do nothing that would cause other

residents to interfere with Sergey Peklun's quiet enjoyment of his beloved service dog or the benefits he lawfully and peacefully derived from her presence.

21.     Julia, the "Morkie," was a sweet little dog, all of nine pounds, who did not cause any genuine significant disturbances or problems to any of TDM's residents. Her presence did not impose an undue financial and administrative burden on TDM, nor did her presence fundamentally alter the nature of TDM's operations.

22.     From September, 2011 through November, 2012, Sergey Peklun benefited from the reasonable accommodation TDM had granted him.

23.     Nonetheless, the Board of TDM carelessly and negligently breached its duty to honor and protect the reasonable accommodation it had given Mr. Peklun by:

a. Failing to maintain proper records regarding its business operations, and specifically by failing to record and clearly and permanently document and publish its 2011 decision to grant a reasonable accommodation to Sergey Peklun by which he was permitted to keep Julia in his condominium unit;

b. Creating, allowing or contributing to confusion and uncertainty as to Julia's status at TDM, such that another resident mistakenly believed that Sergey Peklun lacked the legal right to keep Julia with him, when in fact, he had been given that right, for good cause, in 2011;

c. Mistakenly sending a Notice of Violation to Sergey Peklun on or about November 27, 2012, accusing him of violating its no pet rule and on or about February 21, 2013, wrongfully demanding that Sergey Peklun seek a recertification of the earlier accommodation;

d. Failing to appropriately document and maintain a record of the medical evidence submitted by Mr. Peklun, which showed that without Julia, "there is a danger of respiratory arrest and respiratory failure compounding his other medical conditions" and that an emotional support/service animal was medically necessary to alleviate harmful stress which compounded his medical conditions;

e. Failing to alert a new property management company that took over in the spring of 2013, that Sergey Peklun had been given a reasonable accommodation in 2011;

f. Failing to advise other TDM residents, including one Frank Speciale, that Sergey Peklun had been given a reasonable accommodation in 2011;

g. Contributing to Mr. Speciale's mistaken belief that he had a bona fide legal basis for suing Sergey Peklun and Viktoria Peklun for injunctive relief and damages;

h. Preparing, through one or more of its officers, documents that incorrectly inferred that no accommodation had ever been given to Sergey Peklun and that Sergey Peklun was in violation of TDM's no-pet rule, which documents contributed substantially to a judge's decision to grant an injunction, ordering Sergey Peklun to get rid of Julia; and

i. Otherwise negligently allowing the reasonable accommodation it had given Sergey Peklun in 2011 to be ignored, questioned, challenged, undermined and ultimately destroyed.

24.     As a direct and proximate result of defendants' negligence, Sergey Peklun and Viktoria Peklun were forced to incur reasonable costs and attorney's fees in defending the lawsuit filed against them in county court by Frank Speciale.

25.     As a direct and proximate result of defendants' negligence, Sergey Peklun was ordered to get rid of Julia.  He became convinced he was going to lose his beloved Julia forever, which caused the predicted enhancement of his physical and emotional problems, including increased stress, depression, anxiety and despair.

26.     As a direct and proximate result of the defendants' negligence, Mr. Peklun was humiliated and became increasingly distraught and despondent until, on February 12, 2015, he took his own life.

27.     Sergey Peklun's suicide was a reasonably foreseeable consequence of TDM's actions and omissions.

28.     As a result of her husband's death, Viktoria Peklun suffered the loss of his support and services and his companionship. These losses are permanent or continuing and she will suffer the losses in the future.

29.     As a result of her husband's death, Viktoria Peklun sustained mental pain and suffering. Her losses are permanent or continuing and she will suffer the losses in the future.

30.     As a result of Sergey Peklun's death, funeral and burial expenses were incurred that have become a charge against his estate or were paid by or on behalf of the decedent.

**WHEREFORE**, the plaintiff demands judgment against the defendants for costs

and damages, including costs and attorney's fees incurred in the county court case of *Speciale v. Peklun*, and such other and further relief as the court may deem appropriate.

Further, Plaintiff demands trial by jury of all issues so triable.

### COUNT II – NEGLIGENCE – SURVIVOR CLAIMS

All preliminary allegations are re-asserted and in addition, Plaintiff alleges:

31.     As a direct and proximate result of the Defendants' breach of duty, as alleged in paragraph 23 above, SERGEY PEKLUN suffered humiliation, mental anguish, inconvenience, loss of capacity for the enjoyment of life, and aggravation of one or more previously existing conditions.

32.     Additionally, the Defendant's negligence caused SERGEY PEKLUN to incur the reasonable value or expense of hospitalization and medical and nursing care and treatment he necessarily or reasonably obtained between November 27, 2012 and the moment of his death on February 12, 2015.

33.     As a direct and proximate result of the defendants' negligence, Sergey Peklun was forced to incur reasonable costs and attorney's fees in defending the lawsuit filed against him in county court by Frank Speciale, as described hereinabove.

34.     As a direct and proximate result of the Defendant's breach of duty, as alleged in paragraph 23, VIKTORIA PEKLUN suffered a loss, (by reason of the injuries to her husband that were caused by the incidents in question), of her husband's services, comfort, society and attentions between November 27, 2012 and the moment of his death on February 12, 2015.

**WHEREFORE**, Plaintiff, ALEXANDER PEKLUN, as Personal Representative of the Estate of Sergey Peklun, deceased, demands judgment against the Defendants for damages, court costs, and such other and further relief as the Court deems just and proper. Plaintiff demands trial by jury on all issues so triable.

## COUNT III – DISCRIMINATION IN VIOLATION OF
## THE FEDERAL and FLORIDA FAIR HOUSING ACTS

All preliminary allegations are re-asserted and in addition, Plaintiff alleges:

35.     This action is brought pursuant to the provisions of the Fair Housing Act, 42 U.S.C. Section 3601, et seq., and the Florida Fair Housing Act, Section 760.20, et. seq. (the Acts).

36.     At certain times material hereto, Defendant Maria Verduce was a board member and officer of Tierra del Mar Condominium Association, Inc. (TDM). She resides in Palm Beach County, Florida and is otherwise sui juris.

37.     TDM is operated by a Board of Directors, which included, at certain material times, Defendant, MARIA VERDUCE. During her tenure on the board, and as treasurer and then as president, Ms. Verduce was personally involved in the discriminatory acts described herein. As such, each reference to TDM herein also applies to and includes Defendant, MARIA VERDUCE.

38.     The Acts forbid discrimination in the form of a refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person equal opportunity to use and enjoy a dwelling.

39.     Prior to his death and at all times material hereto, SERGEY PEKLUN was a unit owner and resident at TDM, who was disabled as defined in the Fair Housing Act. He suffered from a variety of serious health issues, including heart disease, kidney

disease, lung disease, sleep apnea, anxiety and depression. He had been determined to be 100% disabled by the Social Security Administration.

40.    Plaintiff specifically alleges that the Defendants discriminated against Sergey Peklun because of his disabilities and in doing so, denied him an equal opportunity to use and enjoy his dwelling.

41.    In 2011, Sergey Peklun acquired a small dog named Julia who provided him with important emotional support and assistance in coping with his physical and emotional disabilities and thus afforded him an equal opportunity to use and enjoy his dwelling.

42.    Sergey's dog, Julia, was an Emotional Support Animal, as defined under Fair Housing Act guidelines.

43.    Accordingly, Sergey Peklun applied to TDM's board for a reasonable accommodation so that he would be permitted to keep Julia with him.

44.    The accommodation requested by Sergey Peklun did not impose an undue financial or administrative burden on TDM, nor did it fundamentally alter the nature of TDM's operations, which was to provide housing.

45.    Allowing a disabled person to keep a dog in a housing unit with a no-pets policy was a reasonable accommodation under the facts of this case.

46.    In the fall of 2011, the Board granted the requested accommodation but failed to make a sufficient record of this accommodation such that persons inquiring about it in subsequent years were unable to confirm its existence.

47.    As a result, certain other residents were given the mistaken impression

that no such accommodation existed and that Sergey Peklun's possession of Julia, in an otherwise no-pet condominium, was unlawful.

48.    Certain members of TDM's board, with authority to speak on behalf of the Board, wrongfully sought to impose additional conditions on Sergey Peklun's right to possess Julia, wrongfully challenged the status of his accommodation, wrongfully participated in efforts to strip him of his beloved companion, wrongfully contributed to the efforts of others to impair, defeat, overcome, reverse or simply ignore his accommodation, and otherwise wrongfully caused Sergey Peklun to fear that he would lose the right to have Julia continue to live with him.

49.    Various actions taken against Sergey Peklun by TDM (through one or more of its officers and representatives, including Ms. Verduce) amounted to harassment and discrimination against Sergey Peklun and his housing rights.

50.    The Defendants' acts and omissions had the effect of creating a reasonable fear in Sergey Peklun that TDM's failure to keep accurate records documenting the accommodation given to him in 2011, and its subsequent conduct inconsistent with the existence of the accommodation, could and likely would result in the reversal of that reasonable accommodation and a corresponding obligation on his part to remove Julia from his property.

51.    On September 26, 2013, Sergey Peklun filed a Housing Discrimination Complaint with the Palm Beach County Office of Equal Opportunity, (PBCOEO) which was dual filed with HUD on October 21, 2013, alleging that he was injured by TDM's discriminatory act. He alleged a violation of Palm Beach County Code Section 15-

58(12) and Section 804f3B of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Act of 1988.

52.    On May 5, 2014, PBEO issued the attached Notice of Determination of Reasonable Grounds, finding and concluding, and Plaintiff herein alleges, that Sergey Peklun had a disability as defined by fair housing laws, that his request for a reasonable accommodation had been granted in 2011, that upon changing management companies in 2013, TDM wrongfully required Sergey Peklun to "re-certify" his request for a reasonable accommodation, that TDM initially wrongfully denied his repeated request, that TDM wrongfully failed to follow its own reasonable accommodation policy by requiring Sergey Peklun to re-apply, and  wrongfully failed to fully engage in the interactive process despite knowing of his disability.

53.    PBEO specifically found and concluded, and Plaintiffs herein allege, that Julia ameliorated many of the effects of Sergey Peklun's medical conditions including hypertension, chronic renal failure, anxiety, depression and sleep apnea.

54.    PBEO specifically found and concluded, and Plaintiffs herein allege, that Julia was very important to Sergey Peklun's support system and his ability to use and enjoy his dwelling and was a necessary, reasonable accommodation.

55.    PBEO specifically found and concluded, and Plaintiffs herein allege, that TDM continued to request additional information from Sergey Peklun, issued violation notices and even filed an arbitration action against him seeking to have Julia removed, and otherwise wrongfully ignored the original accommodation and then wrongfully required and denied his repeated or renewed request for a reasonable accommodation

despite having sufficient information to honor both the original accommodation and/or his second request.

56.     PBEO specifically found and concluded, and Plaintiffs herein allege, that there were reasonable grounds to believe that TDM discriminated against Sergey Peklun on the basis of his disability.

57.     The Fair Housing Act and Palm Beach County's Fair Housing Ordinance authorize the filing of this civil action.

58.     Additionally, one or more of TDM's board members wrongfully provided support to another resident of TDM who sued Sergey and Viktoria Peklun for an injunction requiring them to get rid of Julia and for damages.

59.     Sergey and Viktoria Peklun were forced to engage an attorney to defend that lawsuit and are obligated to pay their attorney a reasonable fee.

60.     Plaintiffs have retained counsel to prosecute this case and are obligated to pay their attorneys a reasonable fee.

WHEREFORE, Plaintiff demands judgment for damages against the Defendants for compensatory and punitive damages and for attorney's fees and costs. Plaintiff further demands a trial by jury on all issues so triable.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent by electronic eservice this _____ day of April, 2015, to: PETER E. S. WALLIS, ESQ., 1937 East Atlantic Boulevard, Suite 104, Pompano Beach, FL 33060, peter@wallisandwallis.net; peter@jmwallis.com, Andrew M. Schwartz, Esq., 4755 Technology Way, Suite 103, Boca Raton, FL 33431, ams@amslaw.biz; cs@amslaw.biz, cac@amslaw.biz; cmp@amslaw.biz, receptionist@amslaw.biz, and to

DAVID B. ISRAEL, ESQ., 12555 Orange Drive, Suite 4023, Davie, FL  33330-4304,

disrael@israellawfl.com.

By: s/ Jack Sobel
**JACK SOBEL**
Attorney Email: JSobel@schwedlawfirm.com
**Eservice Email: eservice@schwedlawfirm.com**
Bar Number: 240869
Attorneys for the Plaintiff
Schwed, Adams, Sobel, & McGinley, P.A.
7111 Fairway Drive, Suite 105
Palm Beach Gardens, Florida  33418
Telephone: (561) 694-6079
Facsimile: (561) 694-6089

IN THE CIRCUIT COURT FOR THE 15TH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY, FLORIDA

PROBATE DIVISION

IN RE: ESTATE OF
SERGEY GRIGOR PEKLUN,

File No.   502015CP001440XXXXSB IX

Deceased.

_____/

## LETTERS OF ADMINISTRATION
(Single personal representative)

**TO ALL WHOM IT MAY CONCERN**

WHEREAS, SERGEY GRIGOR PEKLUN, a resident of Palm Beach County, died on February 12, 2015, owning assets in the State of Florida, and

WHEREAS, ALEXANDER PEKLUN has been appointed personal representative of the estate of the decedent and have performed all acts prerequisite to issuance of Letters of Administration in the estate.

NOW, THEREFORE, I, the undersigned circuit judge, declare ALEXANDER PEKLUN duly qualified under the laws of the State of Florida to act as personal representatives of the estate of SERGEY GRIGOR PEKLUN, deceased, with full power to administer the estate according to law; to ask, demand, sue for, recover and receive the property of the decedent; to pay the debts of the decedent as far as the assets of the estate will permit and the law directs; and to make distribution of the estate according to law.

ORDERED on ___April 6___, 2015.

_____

**CIRCUIT JUDGE**

Copy to: Scott R. Bugay, PA
290 NW 165 Street, P-600
Miami, Florida 33169

STATE OF FLORIDA • PALM BEACH COUNTY
I hereby certify that the foregoing is a true copy as recorded in my office and the same is in full force and effect.

THIS ___ DAY OF ___April___, 20_15_.
SHARON R. BOCK
CLERK & COMPTROLLER

By_____
DEPUTY CLERK

"Estate must be closed ___ months from the date of order"
"No copies received by the court"
"No envelopes received..."

2015 APR -8 AM II: 09
SHARON R. BOCK, CLERK
PALM BEACH COUNTY, FL
SOUTH CTY BRANCH FILED

IN THE CIRCUIT COURT FOR THE 15TH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY, FLORIDA

PROBATE DIVISION

IN RE: ESTATE OF
SERGEY GRIGOR PEKLUN,

File No.   502015CP001440XXXXSB IX

Deceased.

_____/

## ORDER APPOINTING PERSONAL REPRESENTATIVE
(Intestate - Single)

On the petition of ALEXANDER PEKLUN for administration of the Estate of SERGEY
GRIGOR PEKLUN, Deceased, the court finding that the decedent died on February 12, 2015, and
that ALEXANDER PEKLUN is entitled to appointment as Personal Representative by reason of:
He is the son of the deceased and the decedent's wife consents to his appointment IT IS:

**ADJUDGED** that ALEXANDER PEKLUN  is appointed personal representative of  the
Estate of the Decedent, and that upon taking the prescribed oath, filing designation of resident agent
and acceptance, and   entering into bond in the sum of $ _____0_____, letters of
administration shall be issued.

**ORDERED** on _____, 2015.

_____
CIRCUIT JUDGE

Copy to: Scott R. Bugay, PA
290 NW 165 Street, P-600
Miami, Florida 33169

STATE OF FLORIDA - PALM BEACH COUNTY
I hereby certify that the
foregoing record is a true copy
of the record in my office.
THIS _10_ DAY OF _April_ 20_15_
SHARON R. BOCK
CLERK & COMPTROLLER
By _____
DEPUTY CLERK

2015 APR -8  AM 11:09
SHARON R. BOCK, CLERK
PALM BEACH COUNTY, FL.
SOUTH CTY BRANCH-FILED

"Estate must be closed _12_ months
from the date of order"

"No copies received by the court"
"No envelopes received by the court"



**PALM BEACH COUNTY
BOARD OF COUNTY COMMISSIONERS
OFFICE OF EQUAL OPPORTUNITY**

<u>**NOTICE OF DETERMINATION OF REASONABLE GROUNDS**</u>

**Office of Equal Opportunity**

301 N. Olive Avenue, 10th Floor

West Palm Beach, FL 33401

(561) 355-4884

Fax: (561) 355-4932

www.pbcgov.com/equalopportunity

**Palm Beach County
Board of County
Commissioners**

Priscilla A. Taylor, Mayor

Paulette Burdick, Vice Mayor

Hal R. Valeche

Shelley Vana

Steven L. Abrams

Mary Lou Berger

Jess R. Santamaria

**County Administrator**

Robert Weisman

*"An Equal Opportunity
Affirmative Action Employer"*

♲ *printed on recycled paper*

**CASE NAME:**     **Peklun   v.   Tierra   Del   Mar   Condominium
                   Association, Inc.**

**CASE NUMBERS: HUD No. 04-14-0025-8
               PBEO No. 1300330**

---

**I.     JURISDICTION**

A complaint was filed with the Palm Beach County Office of Equal
Opportunity on September 26, 2013 and dual-filed with HUD on October
21, 2013 alleging that the complainant was injured by a discriminatory act.
It is alleged that the respondent was responsible for:  failure to make
reasonable accommodation.  It is alleged that the respondent's acts were
based on disability.  The most recent act is alleged to have occurred on
February 1, 2013, and is continuing.  The property is located at:  1111
South Ocean Blvd., Unit 319, Boca Raton, FL  33432.  The property in
question is not exempt under the applicable statutes.  If proven, the
allegation(s) would constitute a violation of Palm Beach County Code
Section 15-58(12) and Section 804f3B of Title VIII of the Civil Rights Act of
1968 as amended by the Fair Housing Act of 1988.

The Respondent receives no federal funding.

**II.     COMPLAINANT'S ALLEGATIONS**

I am a qualified individual with a disability and because of my disability I
need an emotional support animal to help alleviate my disability.  For well
over a year, the association named above provided me with an
accommodation after I provided the documentation needed.  It was only
when a new board was elected did the matter rise again.  The association's
action was to have its management company provide me an Emotional
Support Animal (ESA) Application.  I returned the application, but during
the pendency of the application, the association disregarded the
procedures it had in place and failed to process the ESA application in the
fashion expressly stated in the procedures.  In July 2013, the association
filed an arbitration action with the Department of Business and Professional
Regulation, Division of Condominiums to have the animal removed.



Peklun v. Tierra Del Mar Condominium Association, Inc.
HUD File No.: 04-14-0025-8 / PBEO No. 1300330
Notice of Determination
Page 2 of 7

As a result of the discriminatory treatment towards me, I am not able to freely fully enjoy my community and dwelling. I believe that I have been discriminated against because of my disability and I request full relief that I am entitled under the applicable fair housing laws.

## III.   RESPONDENT'S DEFENSES

Tierra Del Mar denies all purported acts of discrimination in the Complaint for allegedly failing to provide a reasonable accommodation to Petitioner. Specifically, Respondent denies that it discriminated against Petitioner in any way, shape or form during and/or after his attempts to seek an accommodation.

Significantly, from the time Petitioner first requested the Association allow him to maintain a dog in his unit due to an alleged disability through today's date, Petitioner continues to have and maintain a dog in his unit. In other words, Petitioner did not seek the reasonable accommodation first prior to bringing a dog into the premises – which is not permitted in this "no pet policy" building.

Next, Respondent had previously made attempts to obtain documentation from Petitioner to assist it with making an informed decision regarding the pet request but no such documents have been provided.

Despite Petitioner's claims, Tierra Del Mar has no records indicating the Association held a duly called meeting to approve Petitioner's request for an accommodation, nor any documents to indicate Respondent approved Petitioner's request.

Second, Petitioner alleges that Respondent failed to process his February 28, 2013 Request for a Reasonable Accommodation. However, Respondent adamantly denies this contention because it in fact attempted to process Petitioner's ESA Application but due to incomplete information, non-definitive documentation and more importantly, the health, safety and welfare of other residents, Tierra Del Mar was left with no choice but to deny Petitioner's request via correspondence dated May 31, 2013.

## IV.   FINDINGS AND CONCLUSION

### Findings

The Complainant (Peklun) is the owner of the subject property, 1111 South Ocean Boulevard, Unit 319, Boca Raton, FL 33432, which is located in the Tierra Del Mar community that the Respondent operates and maintains.
On July 26, 2011, Jean LeGrys, Property Manager with The Continental Group, Inc., sent the Complainant a Second Notice of Violation on behalf of



**Peklun v. Tierra Del Mar Condominium Association, Inc.**
**HUD File No.: 04-14-0025-8 / PBEO No. 1300330**
**Notice of Determination**
**Page 3 of 7**

the Respondent. While this notice does not state the basis of the violation, on July 29, 2011, the Complainant replied to the Respondent with a hand written letter accompanied with a doctor's letter. The Complainant stated in his letter, "I am going thru a lot of medical problems. My doctor recommended a pet as help for emotional support and healing therapy." The Complainant's letter also listed his medical conditions as, "cardiac disease, gout disease, kidney failure, high blood pressure, etc." The Complainant's doctor's note from Dr. DiSilvestro dated May 12, 2011 provided to the Respondent further stated Peklun "suffers from cardiovascular disease, which predisposes him to anxiety and depression." Peklun's doctors state that he has physical impairments, specifically cardiac and pulmonary or heart failure; hypertension; chronic renal failure; sleep apnea; lower extremity edema, that substantially limit his ability to walk, breathe, and perform manual tasks.

Peklun has an emotional support animal, a nine (9) pound Morkie named Julia that assists him on a daily basis. Peklun indicated that he has sleep apnea and Julia helps him to wake up and keeps his depression and stress away.

In a letter dated August 31, 2011 through their attorney, the Respondent acknowledged they did receive Peklun's reasonable accommodation request and doctor's letter. The Respondent's attorney indicated that the Respondent required additional medical documentation, to which the Complainant provided. Board members at this time, Wendy Casey, former Board President, and Burt Howard, former Board Vice-President, along with Alexander Curcio, former Director, all confirmed during separate interviews during the investigation that the Board granted Peklun his reasonable accommodation request to have Julia as his emotional support animal at the advice of the Respondent's attorney. While no official Board meeting or vote took place, Peklun and their Board of Directors, in which included at the time Board Member and now Board President Maria Verduce ("Verduce"), came to an understanding that Peklun's animal, Julia, was a reasonable accommodation and the Board made an exception to their "No Pet" policy.

Respondent changed property management companies from The Continental Group, Inc. to the Royale Management Services, Inc. ("Royale Management"). On November 27, 2012, Royal Management sent the Complainant a notice of violation for an unauthorized pet and they also informed the Board of Directors that Frank Speciale (Speciale), a unit owner in the Tierra Del Mar community, threatened legal action against the Board for not enforcing the Declaration of Condominium and removing Peklun's dog. At that time, Board President Casey informed Royal Management that in 2011 the Respondent granted Complainant's request



**Peklun v. Tierra Del Mar Condominium Association, Inc.**
**HUD File No.: 04-14-0025-8 / PBEO No. 1300330**
**Notice of Determination**
**Page 4 of 7**

for a reasonable accommodation for an emotional support animal and it was in the community legitimately, despite Speciale's objections.

Although Verduce indicated during the investigation that the Complainant was never provided a verbal or written approval for the animal from the Respondent, an email exchange obtained during the investigation supports that Verduce stated the Board, wanted to "re-confirm that he (Peklun) needs this medically necessary dog" and that this process, "should be confirmed yearly."

On February 21, 2013, Royale Management, on behalf of the Respondent's Board, sent Peklun a letter with its application for a reasonable accommodation. This application included the Respondent's Association's policy and procedure for reasonable accommodations. Specifically, an applicant must complete the Association's Request for a Reasonable Accommodation form and the applicant must provide completed copies of the Affidavit of Treating Physicians, Acknowledgement of Policy and Service Animal and Emotional Support Animal forms. The Respondent's policy states, "(the) Association will consider all requests for a reasonable accommodations no matter how the request is made; however, use of the supplied forms will expedite the process." Once an applicant's forms and information is received, the management company forwards them to the Board of Directors within 10 days of receipt of the application. A Board Member may ask for additional information if he/she feels the application and information supplied is not complete. If additional information is required by the Board, the applicant will be advised in writing. On or about March 2013, the Complainant provided the Respondent his completed application for a reasonable accommodation request as they requested him to do. Among the documents Peklun provided were affidavits from Dr. Paul Murry and Dr. John DiSilvestro.

According to Dr. Paul Murry, "There is a danger of respiratory arrest and respiratory failure compounding his [Peklun] other medication conditions" and "for this reason, he requires 24 hour monitoring. His pet dog has been trained to detect respiratory arrest in him and to stimulate arousal to present dangerous consequences. His pet is identified as a certified service animal."

Dr. John A. DiSilvestro stated, "I prescribed an emotional support animal and/or service animal as part of patient's medical treatment." Dr. DiSilvestro further stated, "The (emotional support animal/service animal/reasonable animal) is medically necessary and will assist Patient [Peklun] in alleviation of stress which would greatly exacerbate his medical conditions."



**Peklun v. Tierra Del Mar Condominium Association, Inc.**
HUD File No.: 04-14-0025-8 / PBEO No. 1300330
Notice of Determination
Page 5 of 7

Respondent's Board stated his application was incomplete because Peklun failed to attach the signature page of Dr. Murry's affidavit and to provide them with a copy of the service animal certification. There is no evidence to suggest that the Respondent notified Peklun of these missing documents in writing as required by their reasonable accommodation policy. Instead, the Association sent Peklun another notice of violation on or about May 1, 2013. It was not until Peklun's attorney sent the Respondent a letter responding to their May 1, 2013 notice was Peklun informed about his incomplete application for a reasonable accommodation. However, even though Peklun's attorney did transmit the missing page of Dr. Murry's affidavit, the Respondent denied Peklun's accommodation request by letter dated May 31, 2013. The Respondent Association's attorney stated that Peklun was not entitled to the accommodation because Peklun lost that right when he had the animal in his home without requesting the accommodation first. Additionally, Shapiro stated that, "the hair and dander from (Peklun's) dog is causing (Peklun's) neighbor such respiratory distress that he has been forced to stay away from his own home." The neighbor in question owns two (2) units. His units are located immediately to the left of the elevator on the first and second floors, while Peklun's unit is located to the right of the elevator on the third floor. In November or December of 2012, the neighbor informed the Respondent Association of his medical condition is affected by the dander from Peklun's animal and he asked the Respondent to have it removed from the Tierra Del Mar community. Upon denying Peklun's accommodation request, the Respondent proceeded filed an arbitration action with the State of Florida's Department of Business and Professional Regulation. The arbitrator has stayed that action pending the outcome of this complaint. Additionally, the neighbor filed a lawsuit against Peklun in Palm Beach County Court seeking the dog's removal and a temporary injunction has been issued ordering the removal of Peklun's animal.

<u>Conclusion</u>
Peklun has a disability as defined by the fair housing laws. According to Peklun's doctors, he has impairments that substantially limit several major life activities, including sleeping, walking, breathing, and performing manual tasks. He also suffers from depression and anxiety and his doctors are in agreement that Peklun needs an emotional support animal.

Peklun informed the Respondent in writing on two separate occasions that he was disabled and that he required an emotional support animal for his reasonable accommodation. In 2011, the Respondent granted Peklun's request. In 2013, the Respondent changed property management companies and required Peklun to "re-certify" his request for a reasonable accommodation. However, when he provided the Respondent the requested information, they ultimately denied him because he brought the



Peklun v. Tierra Del Mar Condominium Association, Inc.
HUD File No.: 04-14-0025-8 / PBEO No. 1300330
Notice of Determination
Page 6 of 7

animal on the property prior to approval from the Respondent. The Respondent failed to follow their reasonable accommodation policy by requiring Peklun to apply through the process again and by failing to notify him in writing of missing documentation when it was needed. The Respondent failed to fully engage in the interactive process and either knew or were reasonably expected to know of the Complainant's disability.

After establishing that the Complainant is disabled and the Respondent knew or should have known of Complainant's disability, the Complainant must demonstrate that the Complainant's requested accommodation is necessary. Julia ameliorates many of the effects of Complainant's medical conditions including hypertension, chronic renal failure, anxiety, depression and sleep apnea. Complainant indicated that when he has shortness of breath, she wakes him up. He indicated that Julia is his companion and they take walks together in the evening. She assists him and is very important to his support system. Thus, the animal is a necessary, reasonable accommodation.

Despite having a sufficient amount of information to grant Peklun's reasonable accommodation for a second time, the Respondent continued to request additional information, issued violation notices and filed an arbitration action against Peklun to have the animal removed. Thus, it is undisputed that the Respondent's denied the Complainant's request for a reasonable accommodation.

Based on the foregoing, there are reasonable grounds to believe that the Respondent discriminated against the Complainant on the basis of his disability.

## V.    NOTICE AND INVITATION TO CONCILIATE

With the issuance of the foregoing Determination of Reasonable Grounds, the Office of Equal Opportunity invites the parties to join with us in an effort to conciliate the issues raised by the Complaint of discrimination and to resolve the violation found. You will be contacted by a representative of the Office of Equal Opportunity to commence the conciliation process. The period will expire thirty (30) days after the date of service of this Notice of Determination of Reasonable Grounds.

## VI.    ADDITIONAL INFORMATION

Notwithstanding this determination by OEO, the County's Fair Housing Ordinance provides that the Complainant may file a civil action in a court of competent jurisdiction within two years after the alleged discriminatory



Peklun v. Tierra Del Mar Condominium Association, Inc.
HUD File No.: 04-14-0025-8 / PBEO No. 1300330
Notice of Determination
Page 7 of 7

housing practice. Also, the Fair Housing Act provides that the Complainant may file a civil action in an appropriate federal district court or state court within two (2) years after the occurrence or termination of the alleged discriminatory housing practice. The computation of this two-year period does not include the time during which this administrative proceeding was pending.

A copy of the final investigative report and other documents from the file may be obtained from: Pamela Guerrier, Director, Palm Beach County Office of Equal Opportunity, 301 N. Olive Avenue, 10th Floor, West Palm Beach, FL 33401.

Dated this 5 day of ____May____, 2014.


Pamela Guerrier, Director
Palm Beach County
Office of Equal Opportunity


Copies to:

Peter ES Wallis, Esq.                    Jeannie A. Liebegott, Esq.
Wallis & Wallis                          Marshall Dennehey
1600 South Federal Highway               100 NE 3rd Ave., 11th Floor
Federal Tower Bldg., Suite 470           Ft. Lauderdale, FL 33301
Pompano Beach, FL 33062                  7008 3230 0001 4466 7887
7008 3230 0001 4466 7870