### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  15-80801-CIV-BLOOM/VALLE

ALEXANDER PEKLUN, as Personal Representative
of the Estate of Sergey Peklun, Deceased, and
VICTORIA PEKLUN, individually

      Plaintiffs,

v.

TIERRA DEL MAR CONDOMINIUM
ASSOCIATION, and MARIA VERDUCE,

      Defendants.

_____/

### <u>ORDER</u>

**THIS CAUSE** comes before the Court on: (1) Defendant Maria Verduce's Motion to Dismiss, ECF No. [7], filed under Fed. R. Civ. P 12(b)(6), seeking dismissal of Plaintiffs' First Amended Complaint; and (2) Defendant Tierra Del Mar Condominium Association, Inc. ("TDM")'s Motion for Summary Judgment, ECF No. [13], seeking the entry of summary judgment in its favor under Fed. R. Civ. P. 56.[1] The Court is fully advised after careful review of the Motions, the parties' briefs, the record, and the applicable law.

### I.    Background

Plaintiffs filed the instant action in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, which was removed to federal court on June 4, 2015. Plaintiffs allege violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et. seq.*, the Florida Fair Housing Act ("FFHA"), Fla. Stat. § 760.20, *et seq.*, as well as claims of negligence

---

[1]  Plaintiffs' Response to Defendant TDM's Motion for Summary Judgment is also styled as a Cross-Motion for Summary Judgment, seeking summary judgment "against TDM on the issue of liability." ECF No. [20] at 17.

under the Florida Wrongful Death Act ("FWDA"), Fla. Stat. § 768.20, and the Florida Survival

Statute, Fla. Stat. § 46.021.  *See* ECF No. [20-2].

This case was filed after the decedent, Sergey Peklun, committed suicide. Before that

time, Mr. Peklun resided with his wife, Victoria Peklun, in a condominium he owned, located in

the Tierra Del Mar community that Defendant TDM operated and maintained.  Defendant

Verduce was a Board member on Defendant TDM's Board of Directors, and also served as the

Board's president.

Plaintiffs allege that "Sergey Peklun was disabled due to multiple medical and

psychological conditions, including heart disease, lung disease, high blood pressure, kidney

disease, sleep disturbances and apnea, anxiety and depression."  ECF No. [20-2] at 3.  In 2011,

Mr. Peklun adopted a dog named Julia, which Plaintiffs allege was "essential to his physical and

emotional well-being, his will to live, and his enjoyment and use of his dwelling." *Id.*  Plaintiffs

allege that "[o]n or about July 29, 2011, Sergey Peklun applied to the Board of TDM for a

reasonable accommodation to allow him to keep Julia in his condominium unit as an Emotional

Support Animal." *Id.*  Plaintiffs allege that in the fall of 2011, "the Board of TDM granted Mr.

Peklun a reasonable accommodation which allowed Julia to live with him in his condominium

unit, TDM's no-pet rule notwithstanding." *Id.*  Plaintiffs allege that "TDM did not publish,

record or document the fact that it had granted Mr. Peklun's accommodation request," and that

"in subsequent years, the composition of the Board changed and the management company

employed by TDM changed." *Id*. at 4.

Plaintiffs allege that the Board sent Sergey Peklun a Notice of Violation on November

26, 2012, "accusing him of violating its no pet rule and, on or about February 21, 2013,

wrongfully demanding that Sergey Peklun seek a recertification of the earlier accommodation."

*Id.* at 5.   Sergey Peklun filed a complaint with the Palm Beach County Office of Equal Opportunity on September 26, 2013, alleging Defendant TDM's failure to provide a reasonable accommodation. *See* ECF No. [20-3] at 1. Frank Speciale, an owner of another condo in the Tierra Del Mar community, sued Sergey and Victoria Peklun in state court on October 25, 2013, seeking a preliminary injunction for the removal of Julia. Defendant Maria Verduce filed an affidavit with the state court on behalf of Defendant TDM's condominium association, indicating that Sergey and Victoria Peklun owned Julia and kept her within their unit "without the approval of Tierra Del Mar Condominium Association, Inc."  ECF No. [20-1] at 48.   The state court granted a preliminary injunction against Sergey and Victoria Peklun on March 11, 2014. *See* ECF No. [20-5]. The Palm Beach County Office of Equal Opportunity issued a notice of determination and reasonable grounds on May 5, 2014, finding that there were reasonable grounds to believe that Defendant TDM discriminated against Sergey Peklun on the basis of his disability.  *See* ECF No. [20-3] at 6-7.  Frank Speciale filed a motion for contempt in the state court proceeding on December 4, 2014.  *See* ECF No. [20-6] at 1-5. Mr. Peklun committed suicide on February 12, 2015.

## II.    Legal Standards

### a.  Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation").  Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).  "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id*. (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002).  While the Court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions.  *Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) ("When considering a motion to dismiss . . . the court limits its consideration to the pleadings and all exhibits attached thereto.") (internal quotation marks omitted).

### b.  Motion for Summary Judgment under Fed. R. Civ. P. 56

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including inter alia, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id*. (quoting *Anderson*, 477 U.S.

at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Further, the Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (*quoting Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

### III.     Discussion

#### a.  Defendant Verduce's Motion to Dismiss

Defendant Verduce argues that dismissal is warranted because the Amended Complaint fails to allege any specific and detailed allegations against her individually.  She also argues that the negligence claims should be dismissed in their entirety, and that the punitive damages portion of Plaintiffs' FHA claim do not survive the decedent's death.[2]

##### i.     Whether dismissal is warranted based on the style of allegations

Defendant Verduce argues that by grouping Defendant Verduce together with Defendant TDM in the allegations of the Amended Complaint, [i]t is "virtually impossible to ascertain . . . which Defendant committed which alleged act."  ECF No. [7] at 9.  The Court disagrees.

The Amended Complaint alleges that "[d]uring her tenure on the board, Ms. Verduce was personally involved in the acts and omissions described herein.  As such, each reference to TDM herein also applies and includes Defendant Maria Verduce."  ECF No. [20-2] at 2.  As Rule 8(a) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555, the Court finds that the Amended Complaint's incorporation of Defendant Verduce within each allegation of Defendant TDM meets this standard and declines to grant Defendant Verduce's motion to dismiss on this basis.  *Cf. Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) (applying Rule 9(b), "in a case

---

[2]    Though Plaintiffs' response focuses on whether Defendant Verduce can be individually liable under the FHA, such grounds for dismissal were not raised in Defendant Verduce's motion to dismiss and, accordingly, the Court declines to address the issue.  Furthermore, Defendant Verduce argues that Plaintiff cannot state a claim against her for breach of fiduciary duty as well, *see* ECF No. [7] at 13—an argument to which Plaintiff does not respond.  Because Plaintiff's Complaint does not contain a count for breach of fiduciary duty, the Court need not address this argument.

involving multiple defendants, the complaint should inform each defendant of the nature of his alleged participation in the fraud").

### ii.   Whether Plaintiffs' negligence claims should be dismissed

Under Florida law, a negligence claim has four elements: "a duty, breach of that duty, causation, and damages." *Virgilio v. Ryland, Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012) (citing *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1227 (Fla. 2010)).  As to duty, "[u]nder Florida law, the question of whether a duty is owed is linked to the concept of foreseeability.  We have held that duties may arise from four general sources: (1) legislative enactments or administrative regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of a case." *Curd*, 39 So. 3d at 1227-28 (citations omitted).  "Establishing the existence of a duty under Florida's negligence law is a minimum threshold legal requirement that opens the courthouse doors, and is ultimately a question of law for the court rather than a jury." *Virgilio*, 680 F.3d 1329 at 1339 (quoting *Williams v. Davis*, 974 So. 2d 1052, 1057 n.2 (Fla. 2007) (internal quotation marks and alterations omitted)).

The parties have not presented an argument that a duty from a condominium association's members to the respective owners—or lack thereof—is evident from legislative enactments, administrative regulations, or any judicial interpretations of such.  *See, e.g.*, Fla. Stat. § 720.305 ("Obligations of members; remedies at law or in equity; levy of fines and suspension of use rights.").  Thus, to resolve the issue of whether Defendants owed Plaintiffs a duty, the Court turns to the parties' arguments as they rest on the existence of other judicial precedent and the general facts of this case.

Establishing the existence of a duty arising from the general facts of a case "encompasses 'that class of cases in which the duty arises because of a foreseeable zone of risk arising from the acts of the defendant.'"  *Curd*, 39 So. 3d at 1228 (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 n.2 (Fla. 1992)).  As the Florida Supreme Court has explained:

> The statute books and case law . . . are not required to catalog and expressly proscribe every conceivable risk in order for it to give rise to a duty of care. Rather, each defendant who creates a risk is required to exercise prudent foresight whenever others may be injured as a result.  This requirement of reasonable, general foresight is the core of the duty element.

*Id.*  "The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." *McCain*, 593 So. 2d at 502.  "Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses."  *Id.* at 503 (citations omitted).  "Thus, as the risk grows greater, so does the duty, because the risk to be perceived defines the duty that must be undertaken."  *Id.* (citations omitted).

Indeed, Florida judicial precedent imposes no *per se* special relationship between a condominium association, along with its members, and the respective owners. *See, e.g.*, *Machin v. Royale Green Condominium Ass'n*, 507 So. 2d 646, 648 (Fla. 3d DCA 1987) ("The condominium association owed decedent, as a renter in the condominium complex, a duty to exercise ordinary or reasonable care.") (citing *Hemispheres Condominium Ass'n v. Corbin*, 357 So. 2d 1074 (Fla. 3d DCA), *cert denied*, 364 So. 2d 883 (Fla. 1978)).  Thus, the relevant inquiry with respect to the existence of duty is whether Defendant Verduce's conduct, as alleged, foreseeably created a broader zone of risk, which created a duty to lessen the risk or see that sufficient precautions were taken to protect Plaintiff from the harm that the risk imposed—

suicide.  *See McCain*, 593 So. 3d 502-03; *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) (analyzing duty arising from "general facts of the case").

Plaintiffs argue that "[t]his principle has been applied in determining civil liability for another person's suicide."  ECF No. [14] at 9 (citing *Estate of Duckett v. Cable News Network LLLP (CNN)*, No. 5:06-cv-444-Oc-10GRJ, 2008 WL 2959753 (M.D. Fla. July 30, 2008); *Nelson v. Seaboard C. L. R. Co.*, 398 So. 2d 980 (Fla. 1st DCA 1981); *Kelley v. Beverly Hills Club Apts.*, 68 So. 3d 954 (Fla. 3d DCA 2011)). Plaintiffs argue that "[i]n this case, Ms. Verduce's actions created a foreseeable result," as she "knew of Mr. Peklun's mental and emotional disability but nonetheless participated in a campaign of harassment that subjected him to years of stress, anxiety, expense and depression." ECF No. [14] at 10.  Defendant Verduce argues that "Plaintiffs fail to allege what, if any specific duty, Defendant Verduce had towards Sergey Peklun.  Being a member of the Board of Directors of the Association does not, in and of itself, without more, create a duty by which Defendant Verduce becomes obligated to Sergey Peklun." ECF No. [7] at 10.

The Court finds the reasoning from *Aguila v. Hilton, Inc.*, 878 So. 2d 392 (Fla. 1st DCA), *rev. denied*, 891 So. 2d 549 (Fla. 2004), to be instructive.  In *Aguila*, a motel security guard in Panama City Beach, Florida, during spring break, ordered everyone to leave a motel room while responding to an injured occupant lying on the floor—although, as alleged, she knew that some of them were intoxicated.  One of the room's occupants, an unregistered guest, drove away in his truck and rear-ended another car, killing one person and seriously injuring another.  The estate of the decedent sued the motel, arguing that the defendants were negligent because, as alleged, they knew that some of the motel guests and their visitors were underage drinkers and that some of them drove automobiles.

Affirming the trial court's dismissal, the court in *Aguila* held that a motel owed no duty of care to control the conduct of its guests in order to prevent harm to the public.  In so holding, the court rejected the plaintiffs' argument that defendants created a zone of risk to others by promoting underage drinking during spring break—reasoning that "this conduct connects the defendants with the death of the plaintiff's daughter only in the most general way."  *Id.* at 396.  The court explained that "a legal duty is not established by evidence of foreseeability alone," and that "[t]here must also be some evidence that the risk was created by the alleged negligence of the defendant."  *Id.* at 396-97.

The court reasoned that the motel security guard's act of ordering everyone out of the room did not *create* the risk, as the occupants were "free to leave of their own accord," and "[s]ome of them may have decided to remain at the motel in common areas," or "may have decided to walk to other parties in nearby hotels."  *Id.* at 397.  Thus, the court explained, because "the fact that a defendant realizes or should realize that an action on his or her part is required to ensure the safety of another person does not alone create a duty to take that action," *id.* at 399 (citing Restatement (Second) of Torts § 314 (1965)), and because "the defendant must also have a right to take the action in question," *id.*, the mere fact that the motel guard may have realized the underage driver could have harmed someone was not enough to support a duty of care to the plaintiff because "[s]he was not in a position to do anything to lessen that risk.  Short of committing false imprisonment, she had no authority to order that he be detained on the motel grounds."  *Id.* at 399.  *See also Estate of Brennan v. Church of Scientology Flag Serv. Org., Inc.*, 832 F. Supp. 2d 1370, 1381 (M.D. Fla. 2011) ("whether explained by the absence of a duty to prevent an unforeseeable harm or explained by a lack of proximate cause because a suicide is an intervening cause that is unforeseeable, the law protects a person from liability for another's

suicide absent a special relation or unless the defendant has facilitated or contributed to the suicidal impulse by some wrongful action.").  *Compare Bardy v. Walt Disney World Co.*, 643 So. 2d 46 (Fla. 5th DCA 1994) (finding employer had a duty to refrain from ordering its visibly intoxicated employee to drive), *with Swett v. United States*, No. 8:06-CIV-1805-T-24TGW, 2007 WL 1017664, at * (M.D. Fla. Mar. 30, 2007) (finding employer had no duty of care to employee with multiple sclerosis who was in a fatal car accident after leaving work because, though employer required her to work additional hours despite her condition, "Defendant did not order [employee] to drive; it simply did not prevent her from driving.").

Turning to the allegations of the First Amended Complaint, "Sergey Peklun was disabled due to multiple medical and psychological conditions, including heart disease, lung disease, high blood pressure, kidney disease, sleep disturbances and apnea, anxiety and depression."  ECF No. [20-2] at 3.  Plaintiff alleges that "[i]n 2011, Sergey Peklun adopted a hypoallergenic mixed breed Maltese/Yorkshire Terrier ("Morkie") named Julia," and that "[s]he was, in short, essential to his physical and emotional well-being, his will to live, and his enjoyment and use of his dwelling.  Defendant knew this or should have known it."  *Id.*  Plaintiff alleges that Defendant Verduce, and Defendant TDM learned through the process of Plaintiff's attempts to obtain approval for Julia, that "Julia was essential to Mr. Peklun's physical and emotional well-being, and that he was in great danger of falling into despair should he be deprived of her services, her comfort, her love and her attention."  *Id.* at 4.

Plaintiff alleges that "as a direct and proximate result of defendants' negligence,"—acts which include "failing to maintain proper records," *id.* at 5, "failing to advise other TDM residents, that Sergey Peklun had been given a reasonable accommodation in 2011," *id.* at 6, and preparing documents which "incorrectly inferred that no accommodation had ever been given . . .

which documents contributed substantially to a judge's decision to grant an injunction, ordering Sergey Peklun to get rid of Julia," *id.*—"Mr. Peklun was humiliated and became increasingly distraught and despondent until, on February 12, 2015, he took his own life." *Id.* at 7.

Under these facts, the Court does not find that a legal duty has been established on the part of Defendant Verduce.  The facts, as alleged, do not support a finding that Defendant Verduce created the risk of Plaintiff's suicide as a foreseeable result.  Even taking the allegation as true that Defendant Verduce knew that having Julia was essential to Plaintiff's "will to live," as true, this only connects her with the Plaintiff's death "only in the most general way."  *Aguila*, 878 So. 2d at 396.  *See also Paddock v. Chacko*, 522 So. 2d 410, 416 (Fla. 5th DCA 1988) ("It has been recognized that as a general rule that there is no liability for the suicide of another in the absence of a specific duty of care."); *Olson v. Barrett*, No. 6:13-cv-1886-Orl-40KRS, 2015 WL 1277933, at *6 (M.D. Fla. Mar. 20, 2015) (dismissing wrongful death negligence claim based on employee's suicide despite existence of employer-employee relationship, employer's knowledge of "precarious mental state," and employer sending police officers to perform a safety check on her after terminating her because employer did not have a duty to prevent employee's suicide). There is no basis for the Court to conclude that Defendant Verduce had a right to prevent Plaintiff's suicide because "she had no authority" to prevent Plaintiff's decision to take his own life.  *Aguila*, 878 So. 2d at 399.  *See also Olson*, 2015 WL 1277933 at *6 ("implicit in the special relationship exception is the proposition that the special relationship must include the right or ability to control another's conduct") (quoting *Aguila*, 878 So. 2d at 399) (emphasis in original) (internal citations, alterations and quotation marks omitted); *Swett*, 2007 WL 1017664 at *3 ("There must also be allegations that the defendant's conduct created or controlled the risk.") (citing *Aguila*, 878 So. 2d at 396-97); *Knight v. Merhige*, 133 So. 3d 1140 (Fla. 4th DCA 2014)

(affirming dismissal of wrongful death negligence claim because parents had no duty to protect family members from murder of adult son at a holiday dinner).

The cases on which Plaintiff relies do not compel a different conclusion.  *Estate of Duckett*, 2008 WL 2959753, for example, is a wrongful death case under a theory of intentional infliction of emotional distress and, thus, is not probative on the issue of duty in a negligence claim.  Further, in *Nelson*, the court held that in order for an employer to be liable under FELA for the suicide of an employee, "it must be shown that the negligent act of the employer drove the deceased beyond the point he could rationally decide killing himself."  398 So. 2d at 982. There, the court found that based on a suicide note, "a jury could conceivably find that the railroad's negligence in hiring and training of supervisory personnel caused the stress that resulted in the decedent's uncontrollable impulse to kill himself.  Under such circumstances, the defendant's negligent or wrongful act would be actionable." *Id.*  Here, not only is "the broad scope of coverage afforded by [the Federal Employers' Liability Act, 45 U.S.C.§ 51]," *id.*, inapplicable in this case, no suicide note exists, nor does anything alleged in the complaint plausibly suggest that Defendant Verduce drove Plaintiff beyond the point where he could rationally decide killing himself.  *See also Kelley v. Beverly Hills Club Apartments*, 68 So. 3d 954, 958 (Fla. 3d DCA 2011) (holding apartment complex, that contracted with addiction and mental health treatment facility to house facility's residential clients, owed no legal duty to protect a residential client from attempted suicide).

Accordingly, Plaintiff's claims of negligence based on Plaintiff's suicide against Defendant Verduce are dismissed.

### iii.   Whether the punitive damages portion of Plaintiffs' FHA claim survives the decedent's death

Defendant Verduce argues that "[i]n the absence of expressed contrary intent, the survival of a federal cause of action is a question of federal common law," ECF No. [7] at 12 (citing *United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993) and, accordingly, because punitive damages are "penal in nature," they do not survive the decedent's death.  *Id.* (citing *Caraballo v. S. Stevedoring, Inc.*, 932 F. Supp. 1462, 1465 (S.D. Fla. 1996)).  However, here, there is an expressed contrary intent—42 U.S.C § 1988(a)—which provides that where a federal civil rights statute, such as the FHA, does not provide an adequate remedy for a civil rights violation, "the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States shall be extended to and govern."  42 U.S.C. § 1988(a).

Thus, rather than turning to federal common law, the Court reviews the applicable state law on the issue, which is the FWDA.  *See Robertson v. Wegmann*, 436 U.S. 584, 589 n.5 (1987) (noting that reference to "the common law" as referring to state common law or federal common law immaterial because state had "a survivorship statute that, under the terms of § 1988, plainly governs this case").

Indeed, "[t]he FWDA combines the survival and wrongful death action into a single suit." *Degraw v. Gualtieri*, No. 8:11-CV-720-EAK-MAP, 2013 WL 3462332, at *3 (M.D. Fla. July 9, 2013) (citing *Fla. Clarklift, Inc. v. Reutimann*, 323 So. 2d 640, 642 (Fla. 2d DCA 1975)). "It provides a comprehensive remedy to survivors who are damaged as a result of a death and allows the estate to recover the decedent's economic damages." *Id.* (citing Fla. Stat. § 768.21). Here, as an "aggrieved person," 42 U.S.C. § 3602(i)(1) (anyone who "claims to have been

injured by a discriminatory housing practice"), the decedent's widow can bring a claim under the FHA, and there is nothing in the FWDA which indicates that an award of punitive damages terminates upon the decedent's death. *See Fla. Clarklift, Inc. v. Reutimann*, 323 So. 2d 640, 642 (Fla. 2d DCA 1975) ("upon proper allegations and proof of actual damages, punitive damages are recoverable under the new Act") (citing *Martin v. United Security Servs., Inc.*, 314 So. 2d 765 (Fla. 1975)).  Thus, the Court declines to grant Defendant Verduce's motion to dismiss on this basis.

### b.  Defendant TDM's Motion for Summary Judgment

#### i.  <u>Whether Defendant TDM's motion for summary judgment is premature</u>

Plaintiffs state that they "believe the record evidence available is sufficient to determine TDM's liability as a matter of law.  However, if the Court has any inkling to grant TDM's motion for summary judgment, it should consider that Plaintiffs have not had an opportunity to conduct discovery."  ECF No. [20] at 16.  Defendants respond by emphasizing that "the record demonstrates that Plaintiffs[] have had over two years to conduct ample discovery, and have in fact done so."  ECF No. [22] at 23.

"Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."  Fed. R. Civ. P. 56(b).  "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).

Here, Plaintiffs have not provided specified reasons to indicate why Plaintiffs cannot present facts essential to justify opposition.  In fact, Plaintiffs concede that the record contains

sufficient evidence to determine liability as a matter of law. In light of such a concession, the Court is unpersuaded by Plaintiffs that Defendant TDM's summary judgment motion is premature.

   ii. <u>The merits of Defendant TDM's motion for summary judgment and Plaintiff's cross-motion for summary judgment</u>

     *1.  Whether summary judgment should be granted on Plaintiff's negligence claims*

   Defendant TDM argues that summary judgment is merited because "TDM lacked the requisite special relationship with the Decedent that is necessary under Florida law, to impose the specific duty of care necessary to hold TDM liable for Decedent's suicide."  ECF No. [13] at 8-9 (citing *Estate of Brennan v. Church of Scientology Flag Serv. Org., Inc.*, 832 F. Supp. 2d 1370 (M.D. Fla. 2011), *aff'd*, 490 F. App'x 229 (11th Cir. 2012)).  Plaintiffs' response is largely similar to the arguments advanced in opposition to Defendant Verduce's Motion to Dismiss. Plaintiffs argue that "[k]nowing Mr. Peklun's disability, it was entirely foreseeable that TDM's unrelenting harassment caused him such severe stress and emotional upheaval that he would commit suicide." ECF No. [20] at 13.  Plaintiff argues that "the decedent's mental state and the Defendant's level of knowledge about it are crucial determinations." *Id.* at 12 (citing *Duckett*, 2008 WL 2959753 at *17; *Nelson*, 398 So. 2d at 982).  For the same reasons Defendant Verduce did not owe a duty, neither did Defendant TDM, as the record contains insufficient evidence to raise a genuine issue of material fact about Defendant TDM's duty to Mr. Peklun.

   Plaintiffs refer to evidence that Defendant TDM was on notice that "Julia was a medically necessary emotional support animal," and that "TDM knew that Mr. Peklun suffered serious physical impairments compounded by depression and anxiety."  *Id.* at 12-13. Mr. Peklun's emotional support animal was ordered removed by a Florida state court on March 11,

2014. *See* ECF No. [20-6] at 8-9.  Defendant TDM passed a corporate resolution concerning the animal which allowed Mr. Peklun to keep Julia in his unit, subject to the court order being vacated or amended, and confirmed Mr. Peklun's reasonable accommodation request for Julia as an emotional support animal.  *See* ECF No. [13] at 3; ECF No. [20] at 3. Frank Speciale filed a contempt motion in the state court proceeding on December 4, 2014.  *See id.* at 4; 3.  Mr. Peklun committed suicide on February 12, 2015.  *See id.*

Under these facts, even taken in the light most favorable to Plaintiffs, the Court does not find that a legal duty has been established on the part of Defendant TDM to support Plaintiff's wrongful death claim under a theory of negligence.  The record does not support a finding that Defendant TDM created the risk of Plaintiff's suicide as a foreseeable result.  As with Defendant Verduce, the link between the acts of Defendant TDM and Mr. Peklun's suicide are connected "only in the most general way."  *Aguila*, 878 So. 2d at 396.  *See also Paddock v. Chacko*, 522 So. 2d 410, 416 (Fla. 5th DCA 1988) ("It has been recognized that as a general rule that there is no liability for the suicide of another in the absence of a specific duty of care."); *Olson v. Barrett*, No. 6:13-cv-1886-Orl-40KRS, 2015 WL 1277933, at *6 (M.D. Fla. Mar. 20, 2015) (dismissing wrongful death negligence claim based on employee's suicide despite existence of employer-employee relationship, employer's knowledge of "precarious mental state," and employer sending police officers to perform a safety check on her after terminating her because employer did not have a duty to prevent employee's suicide).

There is no basis for the Court to conclude that Defendant TDM had a right to prevent Plaintiff's suicide because it, as with Defendant Verduce, "had no authority" to prevent Plaintiff's decision to take his own life.  *Aguila*, 878 So. 2d at 399.  *See also Olson*, 2015 WL 1277933 at *6 ("implicit in the special relationship exception is the proposition that the special

relationship must include the right or ability to control another's conduct") (quoting *Aguila*, 878 So. 2d at 399) (emphasis in original) (internal citations, alterations and quotation marks omitted); *Swett*, 2007 WL 1017664 at *3 ("There must also be allegations that the defendant's conduct created or controlled the risk.") (citing *Aguila*, 878 So. 2d at 396-97); *Knight v. Merhige*, 133 So. 3d 1140 (Fla. 4th DCA 2014) (affirming dismissal of wrongful death negligence claim because parents had no duty to protect family members from murder of adult son at a holiday dinner).  *Cf. Nelson*, 398 So. 2d at 981 ("The [suicide] note was perhaps the most important piece of physical evidence available as to the state of the decedent's mind immediately prior to his death.").

For these reasons, Defendant TDM's motion for summary judgment on Plaintiffs' negligence claims is granted. Plaintiff's motion for partial summary judgment is denied.

### 2.  Whether Plaintiffs' Fair Housing Act claim survives Mr. Peklun's death

In support of the grant of summary judgment in its favor on Plaintiffs' Fair Housing Act claim, Defendant TDM argues that "because the law of Florida substitutes a statutory wrongful death action for the personal injury action that would otherwise survive under the Florida Survival Statute, the Plaintiffs' Fair Housing action was extinguished when Decedent committed suicide."  ECF No. [13] at 20 (citing *Walters v. Cowpet Bay W. Condo. Ass'n*, No. CV 2012-24, 2014 WL 7466620 (D.V.I. Jan. 2, 2014); *Niemi v. Brown & Williamson Tobacco Corp.*, 862 So. 2d 31 (Fla. 2d DCA 2003)).  In response, Plaintiffs argue that "Mr. Peklun's claims for emotional distress survive his death," and "to hold otherwise would reward FHA violators who cause the death of a claimant or target the elderly or the terminally ill."  ECF No. [20] at 16 (citing *Ambruster v. Monument 3: Realty Fund VIII*, 963 F. Supp. 862 (N.D. Cal. 1997)).

As explained above, where a federal civil rights statute, such as the FHA, does not provide an adequate remedy for a civil rights violation, "the common law, as modified and

changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern."  42 U.S.C. § 1988(a).  *See also Robertson v. Wegmann*, 436 U.S. 584, 588-599 (1987).   Here, the FHA does not contain a survivorship provision, and the parties urge the Court to look to Florida law to determine the ultimate survivorship issue.

Indeed, "[t]he FWDA combines the survival and wrongful death action into a single suit." *Degraw v. Gualtieri*, No. 8:11-CV-720-EAK-MAP, 2013 WL 3462332, at *3 (M.D. Fla. July 9, 2013) (citing *Fla. Clarklift, Inc. v. Reutimann*, 323 So. 2d 640, 642 (Fla. 2d DCA 1975)). "It provides a comprehensive remedy to survivors who are damaged as a result of a death and allows the estate to recover the decedent's economic damages." *Id.* (citing Fla. Stat. § 768.21). While survivors may recover the survivors' mental pain and suffering, loss of the deceased's earnings from the date of injury to the date of death, and for medical or funeral expenses, *see id.*, the FWDA "does not, however, provide a cause of action for the pain and suffering of a *decedent*." *Id.* (emphasis in original). *See also Fla. Clarklift, Inc.*, 323 So. 2d at 641 ("The new Florida Wrongful Death Act . . . eliminates claims for pain and suffering of the decedent from the time of injury to the time of death; however, the decedent's close surviving relatives are allowed recovery for their own personal pain and suffering.  The philosophy of the Act is to afford recovery for this element of damage for the living rather than the dead.").  As Plaintiffs concede, *see* ECF No. [20] at 15, application of Florida survivorship law precludes Plaintiffs' claim for the decedent's emotional distress or pain and suffering.  The Court now turns to the issue of whether Florida survivorship law is inconsistent with the FHA.

"To determine whether state law is inconsistent with federal law within the meaning of

§ 1988(a), the Supreme Court teaches that courts must look to the text of the federal statutes and Constitutional provisions at issue as well as the policies expressed in them." *Estate of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1046 (11th Cir. 2011) (citing *Robertson*, 436 U.S. at 590). "[I]f application of state law is 'inconsistent with the Constitution and laws of the United States,' courts must not apply state law." *Id.* (citing 42 U.S.C. § 1988(a)).

Here, however, the issue is narrowed because the Court has disposed of the negligence claims on account of the absence of a duty. The issue before the Court is whether Plaintiffs' FHA claim for emotional damages, where the defendants did not have a duty to prevent the decedent's suicide, survives or abates under Florida law. *See id.* at 1044-45 ("The state law wrongful death claims . . . and the § 1983 excessive force claims alleging that death was the result of the use of force, were both dismissed at the summary judgment stage . . . [t]herefore, the only issue we address is whether a § 1983 excessive force claim that did not result in the decedent's death survives in Alabama or abates.").

To that issue, the Court finds *Estate of Gilliam* to be instructive. There, a mother of a man who died after officers used tasers during an arrest sued individually and as personal representative of the decedent's estate—alleging a state law wrongful death claim under Alabama law, a § 1983 excessive force claim against both officers that specifically alleged death resulted from the use of force, and a § 1983 excessive force claim against both officers that did not allege death was the result of the use of force. The state law wrongful death claim and the excessive force claim (premised on the allegation that the use of force caused the decedent's death) were disposed of at the summary judgment stage because the decedent's estate did not produce admissible evidence that the officers' use of force caused the decedent's death. The remaining use of force claim proceeded to trial. During the trial, defense counsel repeatedly

moved to dismiss the remaining excessive force claim, arguing that because the decedent had died prior to the filing of the lawsuit, the excessive force claim abated under Alabama survival law.

The district court denied the motions, concluding that Alabama survivorship law would be "inconsistent with the Constitution and laws of the United States." 639 F.3d at 1044.  The Eleventh Circuit noted that "[i]n so concluding, the district court made a factual finding regarding the relationship between the officers' use of force and Gilliam's death. The district court found that, even though the use of force was not the 'proximate cause' of Gilliam's death, it was a 'contributing factor' because his death occurred seven hours after the use of force. Based on this finding, the court reasoned that the pre-death § 1983 claim could survive Gilliam's death."  *Id.* at 1044 n.3.

Reversing, the Eleventh Circuit held that "the district court erred in denying [the] motions to dismiss based on the abatement of [the] excessive force claims," and that when Alabama survival law was applied to the action, "which was not filed prior to the death of [the decedent], the excessive force claim against [the defendant] abates under Alabama law." *Id.* at 1050.  In so holding, the Eleventh Circuit explained that Alabama survivorship law was not "inconsistent with the policies underlying § 1983—the 'compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law.'" *Id.* at 1048 (quoting *Robertson*, 436 U.S. at 591).   The Eleventh Circuit explained that under Alabama's statute, "when a constitutional violation actually causes death, Alabama law provides compensation for the constitutional violation and imposes liability on the state official responsible for the death—a result consistent with the purposes of § 1983." *Id.* at 1047-48.  The Eleventh Circuit recognized that the facts of that particular case were "unusual," because the

decedent could not have filed a claim within the seven hours between the acts complained of and his death, nor could his estate file a claim under the wrongful death statute because it "could not produce admissible evidence that use of force caused Gilliam's death." *Id.*  However, the Court noted that "just because applying Alabama law causes the Estate to lose in this unusual case does not mean Alabama law is generally inconsistent with federal law." *Id.* at 1048.

Here, Plaintiffs seek to recover emotional distress damages under the FHA in circumstances where Defendants had no legal duty to prevent the decedent's suicide, thus meriting dismissal of Plaintiffs' negligence claims. Further, the complained-of acts that allegedly caused the decedent's emotional distress and pain and suffering took place prior to his death, and the decedent could have filed an FHA claim before he died.  Even in the "unusual" event where the emotional distress and pain and suffering occurred at a time close to his death, following the Eleventh Circuit's reasoning in *Estate of Gilliam*, the Court finds that the operation of Florida's survival law to preclude recovery for the decedent's pain and suffering and emotional distress under the FHA in this case is not inconsistent with the purposes of the FHA, which is remedial in nature.  *See Walters v. Cowpet Bay W. Condo. Ass'n*, No. CV 2012-24, 2012-25, 2013 WL 2988021 at *5-*6 (D.V.I. June 14, 2013) (holding that FHA claim survives death of a defendant because the provisions "are remedial, not penal").

Plaintiffs' reliance on *Ambruster* does not compel a different conclusion.  In *Ambruster*, the plaintiff, an elderly woman who suffered from asthma and a heart condition, requested a transfer to a two-bedroom apartment, so she could accommodate a live-in assistant to help her after she was to have open heart surgery.  The defendant, an apartment complex, served her with a 30-day notice terminating her tenancy, and six days later, the plaintiff filed a lawsuit alleging violations of the FHA, and applicable state law.  The next day, the defendant rescinded the 30-

day notice terminating the plaintiff's tenancy, and eight days later, the plaintiff died while undergoing open heart surgery.

Upon ruling on a motion to substitute under Fed. R. Civ. P. 25(a)(1), the court was faced with the issue of whether substitution of the plaintiff's children for the deceased plaintiff extinguished the claim for emotional distress damages under the FHA.  Finding that California's survival statute would not permit the plaintiff's emotional distress damages to proceed, the court turned to the *Robertson* analysis, and determined that "[a]llowing survival of emotional distress damages furthers the policies underlying the FHA."  *Ambruster*, 963 F. Supp. at 865.  The court reasoned that "emotional distress damages often represent a large proportion of the monetary damages available to a FHA plaintiff," and that "housing discrimination has been likened to a 'dignitary tort,' such as defamation or infliction of emotional distress."  *Id.* (quoting *Curtis v. Loether*, 415 U.S. 189, 196 (1974)).  The Court explained:

> Exclusion of emotional distress damages upon a plaintiff's death could seriously dilute the potency of an FHA claim made by a terminally ill or elderly plaintiff.  Because the litigation process can easily outlast the longevity of such plaintiffs, eliminating emotional distress damages can undermine the value of housing discrimination laws as to those groups.  Likewise, their successors will lose a key incentive to enforce their predecessors' rights under the FHA.

*Id.*  Here, the reasoning of *Ambruster* does not apply because the Court is not faced with a plaintiff who died during the pendency of the litigation. The decedent died before the instant lawsuit was commenced. Moreover, the court in *Ambruster* cited in support other district courts in California which held that the preclusion of emotional distress damages was inconsistent with the goals of § 1983. *See id.* Here, faced with the Eleventh Circuit's opinion in *Estate of Gilliam*, the Court is not persuaded that the policy of the FHA is so different from the goals of § 1983 to compel a different result with respect to the decedent's pain and suffering and emotional distress claims under the FHA.

Nonetheless, dismissal of the entirety of Plaintiffs' FHA claim is not merited.  The FWDA does permit the decedent's widow to recover for *her* emotional distress and pain and suffering under the FHA, *see Fla. Clarklift, Inc.*, 323 So. 2d at 641; 42 U.S.C. § 3602(i)(1) ("aggrieved person" is anyone who "claims to have been injured by a discriminatory housing practice"),[3] and the estate to recover for "economic damages in the form of medical expenses and attorney's fees and costs, which his Estate has inherited." ECF No. [20] at 16; Fla. Stat. § 768.21(6).  *See also Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc.*, 347 F. App'x 464, 467 (11th Cir. 2009) ("The Florida Fair Housing Act contains statutory provisions that are substantively identical to the federal Fair Housing Act.") (quoting *Loren v. Sasser*, 309 F.3d 1296, 1299 n.9 (11th Cir. 2002)).  Thus, the Court declines to grant summary judgment on the entirety of Plaintiffs' FHA claim, but does so in part regarding the portion of Plaintiffs' FHA claims premised on the pain and suffering and emotional distress of the decedent.  Furthermore, as Plaintiffs have not argued that they are entitled to summary judgment on the merits of their FHA claims, the Court declines to grant summary judgment in their favor as well.

## IV.    Conclusion

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendant Verduce's Motion to Dismiss, **ECF No. [7]**, is **GRANTED IN PART AND DENIED IN PART**.

2.  Count I and Count II of Plaintiff's Amended Complaint, ECF No. [20-2] against Defendant Maria Verduce are **DISMISSED**.

---

[3]  Though the Court notes that while a "claim alleging that a constitutional violation caused the decedent's death can be asserted through . . . [a] wrongful death statute, the kinds of damages that are recoverable are determined by federal law." *Estate of Gilliam*, 639 F.3d at 1048 n.9 (citing *Gilmere v. City of Atlanta, Ga.*, 864 F.2d 734, 739 (11th Cir. 1989)).   Without benefit of argument from the parties, the Court declines to address the applicability of this tenet to the instant case at this stage of the proceedings.

CASE NO.  15-80801-CIV-BLOOM/VALLE

3.  Defendant Tierra Del Mar Condominium Association's Motion for Summary Judgment, **ECF No. [13]**, is **GRANTED IN PART AND DENIED IN PART**.

4.  Summary Judgment is **ENTERED** in favor of Defendant Tierra Del Mar Condominium on Count I and Count II of Plaintiff's Amended Complaint, ECF No. [20-2].

5.  Summary Judgment is **ENTERED** in favor of Defendant Tierra Del Mar Condominium on the portion of Count III of Plaintiff's Amended Complaint, ECF No. [20-2], premised on the pain and suffering and emotional distress of Sergey Peklun.

6.  Defendant Verduce shall file its Answer to Count III of Plaintiff's Amended Complaint **on or before August 14, 2015**.

7.  The parties shall continue to adhere to the Court's Scheduling Order, ECF No. [19].

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 3rd day of August, 2015.

_____
BETH BLOOM
UNITED STATES DISTRICT JUDGE

cc:    counsel of record