\*\*\*\* CASE NUMBER: 2014CA015280 DIVISION: AN \*\*\*\*
Filing # 21930195 Electronically Filed 12/23/2014 03:38:38 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

SERGEY PEKLUN and VIKTORIA PEKLUN,

        Plaintiff,

vs.                                    CASE NO:

FRANK SPECIALE, and MARIA VERDUCE,

        Defendants.
_____/

## VERIFIED COMPLAINT

COMES NOW, Plaintiffs, Sergey Peklun and Viktoria Peklun, by and through undersigned counsel and sues Defendants Frank Speciale and Maria Verduce in their Verified Complaint, and alleges as follows:

### GENERAL AVERMENTS

1. This Court have jurisdiction pursuant to Florida Statutes §26.012, and claims exceed $15,000.00.

2. Venue is proper inasmuch as all material facts occur in Palm Beach County.

3. All actions arise under Florida Law including Florida Statutes §720.303, Florida Statutes Chapter 617, and the Tierra Del Mar Condominium Association, Inc. ("TDM") governing documents.

4. All conditions precedent to bringing this action have been performed, have occurred, or are waived.

5. Plaintiffs, Sergey Peklun and Viktoria Peklun, are individuals, they are married to each other, and are the owners of a condominium unit in the Tierra Del Mar Condominium Association, Inc., located at 1111 South Ocean Boulevard, Boca Raton, Florida 33432, and both are sui juris.

6. Defendant Frank Speciale ("Speciale") is an individual and owns two condominium units in the Tierra Del Mar Condominium Association, Inc., which are units 120 and 218, located at 1111


PLAINTIFF'S EXHIBIT GG

South Ocean Boulevard, Boca Raton, Florida 33432, and is sui juris.

7. Defendant Maria Verduce ("Verduce") is an individual, and was an officer and director of the Tierra Del Mar condominium Association, Inc. during all times material hereto. Verduce is owner of a condominium unit in the Tierra Del Mar Condominium Association, Inc., unit 523, located at 1111 South Ocean Boulevard, Boca Raton, Florida 33432. Verduce is sui juris.

8. Verduce was a member of the TDM board of directors ("Board") between January 2011 and October 2014. In 2011, Verduce was Treasurer of the TDM Board. In 2012 and 2013, Verduce was President of the TDM Board. In October 2014, Verduce resigned from the TDM Board just hours prior to a recall election rather than face certain recall by the TDM unit owners.

## BACKGROUND FACTS

9. TDM is a condominium association located in Boca Raton and subject to Chapter 720 of the Florida Statutes and its own governing documents, including its Declaration of Condominium ("DEC"). TDM's amended DEC precludes ambulatory pets.[1]

10. Palm Beach Count Code Section 15-58 and Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988, supersedes rules enacted by an individual condominium association such as TDM.

11. Sergey Peklun is a disabled man, receiving 100% Social Security Disability.

12. Sergey Peklun and Viktoria Peklun are from Ukraine.

13. Sergey Peklun had served in the Russian Army prior to 1986, and had been discharged.

14. In 1986, Sergey Peklun was called back to military service following the Chernobyl nuclear power plant meltdown, and he was assigned for service directly within the vicinity of the nuclear fallout area in order to help with the relocation of civilians.

15. During that time, Sergey Peklun was repeatedly exposed to nuclear fallout.

---

1. Service Animals and Emotional Support Animals are not "pets" under Fair Housing Law.

16. Sergey and Viktoria Peklun immigrated to the United States in 1996.

17. From 1996 through 2010 Sergey Peklun worked as a security guard.

18. In Early 2011, Sergey Peklun's deteriorating health required that he stop working and he qualified for 100% Social Security Disability.

19. Sergey Peklun suffers from: cardiac and pulmonary disease; hypertension; chronic renal failure; sleep apnea and respiratory arrest; lower extremity edema; kidney failure; anxiety and depression.

20. In 2011, Sergey Peklun obtained hypoallergenic mix-breed Maltese/Yorkie. Sergey Peklun's doctor concluded that his health would benefit from having an Emotional Support Animal ("ESA") as a medical necessity.

21. Thereafter, Sergey Peklun submitted documentation from his doctors regarding his health to the 2011 TDM Board, property manager, and counsel. TDM's community counsel interviewed Sergey Peklun's doctor, and after full review if the medical documentation, and based on the opinion of counsel (Exhibit A), the 2011 TDM Board in September 2011 approved Sergey Peklun for a reasonable accommodation in order to keep and maintain his ESA within TDM.

22. Four (4) of Six (6) board members from the 2011 TDM Board have sworn affidavits stating on personal knowledge that the 2011 TDM Board approved Sergey Peklun for his request for a reasonable accommodation to keep his ESA, "Julia". (Composite Exhibit B)

23. From September 2011 through November 2012, Sergey Peklun benefited from the reasonable accommodation TDM had granted him.

24. On November 19th 2012, Speciale commenced a campaign of letter writing to the TDM property management company: Royale Management Services ("RMS"). Speciale admits in this letter that the TDM Board told him that Sergey Peklun's ESA was a medically necessary dog. (Exhibit C).

25. Speciale lives on the second floor on the east side of the TDM building, and Plaintiffs live on the third floor on the west side of the TDM building.

26. In the November 19th 2012 letter, Speciale alleges he has allergies and seeks to blame the hypoallergenic ESA, even though the ESA had been in TDM for a year and a half, and he suffered from allergies for three (3) or more years. Speciale's medical history shows he has lived in his units that have had water intrusion, black mold, and that he performed significant renovations to unit 218 from March 2011 forward.

27. Further, Speciale seeks to undermine Fair Housing law by asserting that TDM should flout the Federal Fair Housing mandate of reasonable accommodation. Speciale asserts that Sergey Peklun's reasonable accommodation be rescinded, which work to deny Sergey Peklun equal enjoyment of his dwelling. Speciale thereafter in the same letter makes his first threat of legal action if he does not get his way.

28. During TDM Board year 2011, Verduce was treasurer and fully aware that the 2011 TDM Board had granted Sergey Peklun a reasonable accommodation to keep and maintain Julia in TDM under Federal Fair Housing law. However, Verduce in November 2012 in collusion with Speciale started their campaign to disrupt the reasonable accommodation the 2011 TDM Board granted Sergey Peklun.

29. In November 2012, three (3) of the 2011 TDM board members other than Verduce were on the Board. All three: Wendy Casey, Bert Howard, and Alex Curcio, have each sworn affidavits that TDM granted Sergey Peklun reasonable accommodation for his ESA. Another 2011 TDM Board member, Ronnie Barker, has also sworn an affidavit stating that TDM granted Sergey Peklun a reasonable accommodation to keep his ESA. Curcio and Barker also serve on the 2014 TDM Board. (Composite Exhibit B).

30. Evidence shows that Verduce was well aware that TDM had granted Sergey Peklun his

4

reasonable accommodation.

31. On January 3rd 2013 RMS confirms to TDM counsel, Glazer & Associates, P.A. that Sergey Peklun's ESA was approved to reside in TDM. (Exhibit D).

32. On January 4th 2013, Veduce states in an email to RMS:

> Also an up-to-date application should be sent to Mr. Peklun to *re-confirm* that he needs this *medically necessary* dog (this should be confirmed yearly). Upon receipt of these items, I will personally speak to Mr. Speciale to ascertain if he intends to seek legal action. (emphasis added). (Composite Exhibit E).

33. RMS responded to Verduce on January 4th 2013 and stated:

> I have spoken with [Speciale] and explained that this was an *approved ESA exception* [sic] he has threatened to sue us and the association this therefore requires legal review.
>
> Before sending a *reconfirmation* to Mr. Peklun we need an ok from legal counsel as if this is not properly handled it can result in a case being brought against the association by the county of the fed for ADA violations. (emphasis added). (Composite Exhibit E).

34. Despite knowing that Sergey Peklun had received his reasonable accommodation in September 2011, Verduce sought to impose an additional ESA/Service Animal application on Sergey Peklun. (Composite Exhibit E). Such action is a violation of Federal law. Indeed, Verduce pressured RMS to require Sergey Peklun to apply for his reasonable accommodation a second time despite knowing of Sergey Peklun's disability and prior approval for his reasonable accommodation.

35. In his March 10th 2013 letter to RMS Speciale acknowledges that Sergey Peklun's reasonable accommodation was approved by the 2011 TDM Board, and that the reasonable accommodation had again been approved a second time in-or-about March 2013. (Exhibit F). What is also apparent in Speciale's March 10th 2013 letter, and in his subsequent letters, is that he and Verduce are acting in conspiracy despite both knowing that the 2011 TDM Board had approved Sergey Peklun for his reasonable accommodation. The appearance of conspiracy between Speciale and Verduce is express in Speciale's March 11th 2013 letter to RMS. (Exhibit G).

5

36. On March 11th 2013, RMS responded to Speciale and again stated that Julia had been previously approved by TDM. (Exhibit H).

37. In March 2012, the TDM Board voted that the Board President must obtain Board approval via a vote at a Board meeting prior to consulting with TDM counsel. However, throughout 2012 and 2013, Verduce operated unilaterally without TDM Board meeting or Board involvement, and used her position as TDM President to operate unilaterally to undermine Sergey Peklun's reasonable accommodation.

38. Under Verduce's instructions, RMS on February 21st 2013 send Sergey Peklun an application for a reasonable accommodation, despite RMS and Verduce acknowledging that Sergey Peklun already had been granted a reasonable accommodation in September 2011. Sergey Peklun received the "re" application on February 25th 2013. The cover letter stated that the "application *must* be completed and retuned to [TDM] no later than Friday March 01, 2013." This gave Sergey Peklun—a disabled man—three (3) days to comply.

39. Somewhere between February 21st 2013 and May 2013, RMS is believed to have quit being TDM's property manager, on information and belief, because of the threats by Speciale that he would sue RMS in relation to the Sergey Peklun ESA, and because of his and Verduce's bullying demeanor.

40. At some point prior to May 2013, Condominium Concepts Management, Inc. ("CCM") became TDM property manager. Apparently, Verduce did not advise CCM of the Peklun "re" application following RMS's departure. When CCM was apprised of the "re" application, CCM was unaware, and was later able to 'find' the completed application.

41. On May 31st 2013, TDM denied the "re" application for reasonable accommodation in a letter from Glazer & Associates, P.A. The Glazer letter is surprising in both its failure to acknowledge that the firm had actual knowledge of the 2011 reasonable accommodation on January 3rd 2013 via

an email from RMS to the Glazer firm. The RMS email specifically states: "When we checked with the Board, they told us that this owner was approved for an Emotional Support Animal" (Exhibit D), but also because Verduce had actual acknowledge of the 2011 reasonable accommodation.

42. Curiously, the Glazer firm May 31st 2013 letter bases the denial on false legal concepts as well as misinformation. (Exhibit I). Furthermore, the Glazer firm took action under the unilateral authorization of Verduce who failed to bring the matter to the TDM Board or get authorization to engage TDM counsel.

43. On July 16th 2013, at the sole authorization of Verduce, the Glazer firm initiated an arbitration action against Sergey Peklun with the Florida Division of Condominiums, Timeshares, and Mobile Homes.

44. On September 10th 2013, Palm Beach County, Office of Equal Opportunity ("OEO") acknowledged receipt of Sergey Peklun's Discrimination Questionnaire and Disability Supplemental Questionnaire, which ultimately issued to a Discrimination Complaint, PBEO #1300330, HUD File No: 04-14-0025-8.

45. On October 25th 2013, Speciale file a suit against Sergey Peklun and Viktoria Peklun seeking injunctive relief and damages. Bizarrely, Speciale did not sue TDM, the entity that had provided Sergey Peklun with his reasonable accommodation in September 2011, and which Speciale was clearly aware.

46. On March 11th 2014, the County Court in Palm Beach County entered a temporary injunction against Sergey Peklun when the court refused to accept three (3) affidavits from 2011 TDM Board members, possessing personal knowledge of the approved reasonable accommodation, into evidence.

47. Verduce had provided Speciale, in the name of TDM, as its president, an affidavit swearing that no reasonable accommodation had been granted Sergey Peklun, despite Verduce's own personal knowledge and written acknowledgement that the Sergey Peklun had indeed been granted a

reasonable accommodation to keep and maintain Julia in TDM in September 2011. (Exhibit J).

48. However, Verduce, despite the inherent violations of the Fair Housing Act, could sit back and rely on her unilateral denial of the violative "re" application forced on Sergey Peklun in May 2013 in making the statements in her Affidavit.

49. Paragraph 4 of Verduce's affidavit is a false statement, as is paragraph 5. Paragraph 6 of Verduce's affidavit is full of false statements and statements that are not relevant to whether Sergey Peklun was actually granted a reasonable accommodation, which is sworn to by four (4) 2011 TDM Board members.

50. Paragraph 7 of Verduce's affidavit is correct that Sergey Peklun requested an accommodation for his ESA. However, Verduce does not address TDM's response. And if indeed, TDM had either not responded or denied the request after submission of documentation that TDM would be in violation of the Fair Housing Act.

51. Paragraph 8 of Verduce's affidavit is a an admission that TDM violated Sergey Peklun's Fair Housing rights by again sending him a violation letter sixteen (16) months after the first violation notice, and 2011 reasonable accommodation approval. Furthermore, Verduce again admits that Sergey Peklun again requested a reasonable accommodation, which the requirement to do so was a violation of that Fair Housing Act, as was the May 31st 2013 denial via the letter from the Glazer firm.

52. Paragraph 9 of Verduce's affidavit is predicated on misstatement of facts. Paragraph 10 of Verduce's affidavit is a further admission of violations of the Fair Housing Act, and a false statement that Sergey Peklun did not complete the "re" application. Paragraph 11 of Verduce's affidavit is predicated on misstatement of facts, especially that the "re" application was not completed. All such misstatements of fact, false statements amount to admissions by Verduce of Fair Housing violations.

53. Paragraph 12 of Verduce's affidavit is an admission that she caused TDM to fail to follow the

8

"re" application process set forth in the "re" application package sent to Sergey Peklun on February 21st 2013. Furthermore, paragraph 12 of Verduce's affidavit is an admission that she caused TDM to violate the Fair Housing Act.

54. On information and belief, Verduce colluded with Speciale in the preparation of her affidavit for the sole purpose to serve Speciale's bogus claims in the county court action, *Speciale v. Peklun*, Case No: 502013CC013308XXXXSB.

55. Verduce either acted unilaterally in the preparation of her affidavit, or in collusion with Speciale in the drafting.

56. Verduce acted without TDM Board approval or vote to commit TDM as a witness to Speciale's suit. Verduce acted individually in conspiracy with Speciale, through the misuse of the office of TDM's President.

57. Throughout the Speciale letters and interview in the OEO Discrimination Complaint, it is clear that he is a shill for Verduce, and it is equally clear that Verduce is a shill for Speciale.[2]

58. Speciale and Verduce have worked together in collaboration to undermine Sergey Peklun's reasonable accommodation inasmuch as each knew that the 2011 TDM Board allowed Sergey Peklun his reasonable accommodation.

59. Verduce's and Speciale's actions together and apart have caused Sergey Peklun extreme emotional and physical distress. Since 2013, when Verduce and Speciale commenced their legal actions, Sergey Peklun has been rushed to hospital on five (5) occasions suffering from elevated stress caused by Verduce and Speciale, which include financial stress resulting from having to

---

2. A **shill**, also called a **plant** or a **stooge**, is a person who publicly helps a person or organization without disclosing that they have a close relationship with the person or organization.

"Shill" typically refers to someone who purposely gives onlookers the impression that they are an enthusiastic independent customer of a seller (or marketer of ideas) for whom they are secretly working.

See http://en.wikipedia.org/wiki/Shill

9

defend his civil rights from discrimination through the actions of Verduce and Speciale.

60. Verduce as an officer/director of TDM owes a fiduciary to each owner of TDM, including Sergey and Viktoria Peklun. Through her abuse of her office and unilateral actions taken with out the authorization of the TDM Board, Verduce has breached her fiduciary duty owed Sergey and Viktoria Peklun, as well as TDM and each of the other owners that are owed fiduciary responsibility, rather than embroiling TDM in Fair Housing violations and discriminatory actions. Verduce's actions have resulted in what RMS, and 2011 TDM counsel predicted. TDM is subject of an OEO Determination of Reasonable Grounds that TDM engaged in discriminatory practices. (Exhibit K).

61. The reckless and intentional conduct directed at Sergey Peklun and Viktoria Peklun by Verduce and Speciale has been outrageous and has caused severe emotional distress.

62. Verduce and Speciale were well aware that Sergey Peklun was a disabled man with extensive health concerns.

63. Verduce and Speciale were well aware that Sergey Peklun had been approved for the reasonable accommodation to keep and maintain his ESA in TDM.

64. Verduce and Speciale acted together and individually to undermine Sergey Peklun's reasonable accommodation and sought to disrupt Sergey Peklun's reasonable accommodation and sought to deprive Sergey Peklun of his approved ESA.

65. Verduce's and Speciale's conduct and behavior goes beyond the boundaries of decency and is intolerable.

66. Verduce and Speciale collaborated to target Sergey Peklun and his reasonable accommodation with the intention of causing emotional distress.

### COUNT I – BREACH OF FIDUCIARY DUTY AGAINST VERDUCE

67. Plaintiff re-alleges paragraphs 1 – 64 above as though fully set forth herein.

68. Verduce at all times material hereto was a TDM Board member holding the position of

10

Treasurer in 2012 and President in 2013 and 2014.

69.   As and officer/director of TDM, Verduce held position as a fiduciary of TDM, and had a further moral responsibility to protect the legal rights of a disabled man.

70.   Sergey and Viktoria Peklun have a right to expect the Verduce would support and enforce the reasonable accommodation the 2012 TDM Board granted Sergey Peklun, and not to actively seek to undermine and deprive Sergey Peklun of his reasonable accommodation.

71.   Verduce took action against Sergey Peklun in the following fashions:

  a. With full knowledge of the 2012 TDM approval allowing Sergey Peklun a reasonable accommodation to keep his ESA, Verduce acted unilaterally to deny Sergey Peklun his fair housing rights;

  b. Verduce unilaterally sent violation letters to Sergey Peklun when she knew of his reasonable accommodation;

  c. Verduce subjected Sergey Peklun to a second approval process and then denied the application even though all applicable documentation had been submitted;

  d. Verduce in violation of TDM Board rules, engaged legal counsel to commence legal action against Sergey Peklun even though she knew Sergey Peklun had been granted a reasonable accommodation in 2012;

  e. Verduce acted in without TDM Board approval in seeking to deny Sergey Peklun of his Fair Housing rights;

  f. Verduce actively engaged with Speciale in conspiracy in the suit Speciale brought against Sergey and Viktoria Peklun;

  g. Verduce acted unilaterally without TDM Board approval and committed TDM as a witness in Speciale's action for injunction.

72.   Sergey Peklun has suffered damages proximately caused by Verduce's breach.

11

73. Verduce is in violation of her fiduciary duty under FS§617.0834(1)(b)(3), which states:

> (1) An officer or director of a nonprofit organization recognized under s. 501(c)(3) or s. 501(c)(4) or s. 501(c)(6) of the Internal Revenue Code of 1986, as amended, or of an agricultural or a horticultural organization recognized under s. 501(c)(5), of the Internal Revenue Code of 1986, as amended, is not personally liable for monetary damages to any person for any statement, vote, decision, or failure to take an action, regarding organizational management or policy by an officer or director, unless:
>
> (a) The officer or director breached or failed to perform his or her duties as an officer or director; and
>
> (b) The officer's or director's breach of, or failure to perform, his or her duties constitutes:
>
> 3. Recklessness or an act or omission that was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

74. Verduce has been reckless as defined in FS§617.0834(2)(a)1.-2.

75. Verduce has with bad faith, malicious purpose, and in a manner exhibiting wanton and willful disregard of human rights, safety, or property of Plaintiffs' failed to perform her duties as an officer and director of TDM.

76. More specifically, Verduce has been personally involved in each and every act and/or omission in her campaign against Sergey and Viktoria Peklun in seeking to undermine the reasonable accommodation that she is very well aware of and acting unilaterally to bring actions against Sergey Peklun and is her conspiracy and subterfuge with Speciale.

WHERFORE, Sergey Peklun and Viktoria Peklun demand judgment against Verduce for breach of fiduciary duty and for damages, attorneys' fees and court costs under Florida Statute §720.305, and for such further and other relief as the Court deems just and proper.

<u>COUNT II – CONSPIRACY AGAINST VERDUCE AND SPECIALE</u>

77. Plaintiff re-alleges paragraphs 1 – 64 above as though fully set forth herein.

78. Verduce and Speciale have engaged in an unlawful attempt to deny Sergey Peklun his ESA.

12

Despite the 2012 TDM Board approving Sergey Peklun for a reasonable accommodation to keep and maintain his ESA at TDM, Verduce and Speciale, with full actual knowledge of the approval, engaged in a conspiracy to undermine Sergey Peklun's reasonable accommodation that is provided for under the Fair Housing Act.

79. Verduce and Speciale despite acknowledging the approval of the reasonable accommodation worked together in conspiracy to deny Sergey Peklun his legal right to his ESA.

80. In support of the conspiracy, Verduce overtly acted unilaterally without TDM Board involvement and authorized legal action against Sergey Peklun to deny him of his rightful reasonable accommodation provided for under the Fair Housing Act. Verduce had served on the 2012 TDM Board that granted the ESA approval, and Verduce had actual knowledge of the approval. RMS repeatedly advise both Verduce and Speciale that Sergey Peklun's reasonable accommodation was an approved ESA exception. Sergey Peklun's reasonable accommodation had been in place for 14-months when Speciale started his campaign of threats to RMS and his attempt to undermine Sergey Peklun's ESA reasonable accommodation. Verduce and Speciale have acted in concerted effort against Sergey and Viktoria Peklun and Sergey Peklun's rights under the Fair Housing Act to keep and maintain his ESA in TDM.

81. Sergey Peklun is a disabled man and is entitled to protections against discrimination under the Fair Housing Act. Speciale and Verduce have acted overtly in conspiracy to deny Sergey Peklun and Viktoria Peklun Fair Housing rights.

82. Sergey Peklun and Viktoria Peklun have suffered damages because of Verduce's and Speciale's conspiracy to interfere with Sergey Peklun's Fair Housing rights as a disabled man.

WHERFORE, Sergey Peklun and Viktoria Peklun demand judgment against Verduce and Speciale jointly and severally for conspiracy and for damages, attorneys' fees and court costs under Florida Statute §720.305, and for such further and other relief as the Court deems just and proper.

## COUNT III - INTENTIONAL INFLICTION OF SEVERE
## EMOTIONAL DISTRESS AGAINST VERDUCE AND SPECIALE

83. Plaintiff re-alleges paragraphs 1 – 64 above as though fully set forth herein.

84. Sergey Peklun is a disabled man suffering from numerous physical ailments and anxiety and depression.

85. Sergey Peklun is entitled under Fair Housing law to keep and maintain his ESA in his condominium apartment under a reasonable accommodation that was granted him in September 2011.

86. Verduce was a TDM Board member in 2011 and is aware that Sergey Peklun the 2011 TDM Board granted him a reasonable accommodation to keep and maintain his ESA.

87. Verduce has acknowledged in writing that Sergey Peklun had received approval for his reasonable accommodation, and wanted him to have to "re-confirm" every year that he required his "medically necessary dog".

88. Speciale has acknowledged in writing that Sergey Peklun had received approval for his reasonable accommodation.

89. Despite having actual knowledge, Verduce and Speciale commenced a campaign of conduct that was and remains intentional and reckless and for the purpose of causing emotional distress, or at least knowing of Sergey Peklun's poor health, that such intentional and reckless conduct would cause emotional distress.

90. Verduce and Speciale worked in collusion in their campaign to deny Sergey Peklun his approved ESA, commenced legal action, caused severe financial hardship, anxiety, deterioration in health, and depression.

91. Verduce and Speciale worked in collusion in their campaign to deny Sergey Peklun his approved ESA, they commenced legal actions, and have caused Viktoria Peklun severe financial

14

anxiety, deterioration in health, and depression.

92. Verduce's and Speciale's intentional and reckless conduct has been outrageous, immoral, mean spirited, discriminatory, and beyond the bounds of decency that within a civilized community would be deemed abhorrent and detestable.

93. The conduct of Verduce and Speciale has caused Sergey and Viktoria Peklun severe emotional distress.

WHERFORE, Sergey Peklun and Viktoria Peklun demand judgment against Verduce and Speciale jointly and severally for intentional infliction of severe emotional distress and for damages, attorneys' fees and court costs under Florida Statute §720.305, and for such further and other relief as the Court deems just and proper.

## VERIFICATION OF SERGEY PEKLUN

BEFORE ME, the undersigned authorized duly qualified to administer oaths, personally appeared, Sergey Peklun, who was deposed and states that she has personal knowledge of the facts set forth in this Verified Complaint and they are true and correct.

By: _____
Sergey Peklun

STATE OF FLORIDA
COUNTY OF BROWARD

The foregoing instrument was acknowledged before me this 22 day of Dec 2014, by Sergey Peklun, personally known to me.

PETER WALLIS
MY COMMISSION # EE73653
EXPIRES: March 14, 2015
Fl. Notary Discount Assoc. Co.

Notary Signature: _____
NOTARY PUBLIC

## VERIFICATION OF VIKTORIA PEKLUN

BEFORE ME, the undersigned authorized duly qualified to administer oaths, personally appeared, Viktoria Peklun, who was deposed and states that she and he have personal knowledge of the facts set forth in this Verified Complaint and they are true and correct.

By: _____
Viktoria Peklun

STATE OF FLORIDA
COUNTY OF BROWARD

The foregoing instrument was acknowledged before me this 22 day of Dec 2014, by Viktoria Peklun, personally known to me.

15



Notary Signature: _____

Respectfully submitted this 23rd day of December 2014.

J.M. WALLIS, P.A.
1937 East Atlantic, Boulevard, Suite 104
Pompano Beach, Florida 33060
Phone: 954.941.9005 • Fax: 954.941.9010

By: _____
Peter E.S. Wallis
Florida Bar No: 136042
Counsel for Plaintiffs