IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT IN AND FOR PALM BEACH COUNTY, FLORIDA

Alexander Peklun, as Personal Representative of the Estate of Sergey Peklun, deceased, and Viktoria Peklun, individually,

    Plaintiffs,

vs.

Tierra Del Mar Condominium Association, Inc. and Maria Verduce,

    Defendants.
_____/

Case No: 50 2014 CA 015280 XXXX MB

## FIRST AMENDED COMPLAINT

Plaintiff, Alexander Peklun, as personal representative of the Estate of Sergey Peklun, deceased, sues Defendants, Tierra Del Mar Condominium Association, stating:

### PRELIMINARY ALLEGATIONS APPLICABLE TO ALL COUNTS

1. This is a cause of action for damages in excess of $15,000.00.

2. All conditions precedent to filing this action have been complied with, excused, expired or waived.

3. All acts or omissions complained of herein occurred in Palm Beach County, Florida.

4. Alexander Peklun is the duly appointed personal Representative of the Estate of his deceased father, Sergey Peklun. Copies of the Letters Of Administration and Order Appointing Personal Representative are attached.

5. Sergey Peklun died on February 12, 2015. At that time, and for the preceding twenty five years, he was lawfully married to Viktoria Peklun.

**EXHIBIT A**



6. Sergey Peklun's survivors, as defined in section 768.18 of Florida's Wrongful Death Act, are his estate and his surviving spouse, Viktoria Peklun.

7. The Defendant, Tierra Del Mar Condominium Association, Inc., hereinafter also referred to as "TDM," is a Florida corporation located at 1111 South Ocean Boulevard in Boca Raton, Palm Beach County, Florida.

8. The Defendant, Maria Verduce, is a resident of Palm Beach County and is otherwise sui juris. At all times material hereto, Ms. Verduce was a member of TDM's Board of Directors, and at times served as its treasurer and then as its president. During her tenure on the board, Ms. Verduce was personally involved in the acts and omissions described herein. As such, each reference to TDM herein also applies to and includes Defendant, MARIA VERDUCE.

9. At the time of Sergey Peklun's death, and at all times pertinent hereto, Sergey Peklun was lawfully married to his wife, Viktoria Peklun. Together they owned and resided in condominium unit #319 located within the Tierra Del Mar Condominiums.

10. At all times material hereto, the defendant TDM acted by and through its board, including its directors and officers, for whose negligence the Board is legally responsible.

11. At the time of his death, and at all times pertinent hereto, Sergey Peklun was permanently and totally disabled. The problems that led to his disability and failing health are believed to have begun when he was exposed to radiation immediately following the Chernobyl nuclear disaster while helping to evacuate residents from the surrounding area.

12. Sergey Peklun's was disabled due to multiple medical and psychological conditions, including heart disease, lung disease, high blood pressure, kidney disease, sleep disturbances and apnea, anxiety and depression.

### COUNT I – NEGLIGENCE – WRONGFUL DEATH

All preliminary allegations are re-asserted and in addition, Plaintiff alleges:

13. In 2011, Sergey Peklun adopted a hypoallergenic mixed breed Maltese/Yorkshire Terrier ("Morkie") named Julia. Julia assisted Mr. Peklun on a daily basis, including waking him when he stopped breathing in his sleep. Julia's presence and her services, attentions, comfort and love were invaluable to Mr. Peklun in controlling, or at least limiting, his depression and stress. She was, in short, essential to his physical and emotional well-being, his will to live and his enjoyment and use of his dwelling. Defendant knew this, or should have known it.

14. On or about July 29, 2011, Sergey Peklun applied to the Board of TDM for a reasonable accommodation to allow him to keep Julia in his condominium unit as an Emotional Support Animal. He delivered a handwritten letter, accompanied by a doctor's note, advising, "I am going thru a lot of medical problems. My doctor recommended a pet as help for emotional support and healing therapy."

15. Mr. Peklun's application was well supported by medical evidence showing that Julia was exceptionally well suited to his medical and emotional needs and represented a vital component of his physical and emotional health and well-being.

16. In a letter dated August 31, 2011, the board, through its attorney, acknowledged receipt of Mr. Peklun's reasonable accommodation request and

supporting doctor's letter. Additional documentation was requested and Mr. Peklun provided it. His doctors were contacted and they confirmed these facts.

17. Through this process, the defendant learned that Julia was essential to Mr. Peklun's physical and emotional well-being, and that he was in great danger of falling into despair should he be deprived of her services, her comfort, her love and her attention.

18. In the fall of 2011, the Board of TDM granted Mr. Peklun a reasonable accommodation which allowed Julia to live with him in his condominium unit, TDM's no-pet rule notwithstanding.

19. For reasons particular to TDM's own interests, perhaps to avoid encouraging other residents to seek similar accommodations, TDM did not publish, record or document the fact that it had granted Mr. Peklun's accommodation request. Nonetheless, members of its board, including its officers, became aware in 2011 of the granting of the reasonable accommodation and the invaluable and essential services it permitted Julia to provide to Mr. Peklun. However, in subsequent years, the composition of the board changed and the management company employed by TDM changed. As a result, confusion arose with TDM as to whether Sergey Peklun was entitled to have Julia live with him. This confusion persisted in 2013, 2014 and 2015 and resulted in the tragic consequences complained of herein.

20. At all times material hereto, TDM had a legal duty to document, confirm and honor the reasonable accommodation it first extended to Mr. Peklun in 2011, to do nothing to jeopardize that accommodation and to do nothing that would cause other

residents to interfere with Sergey Peklun's quiet enjoyment of his beloved service dog or the benefits he lawfully and peacefully derived from her presence.

21. Julia, the "Morkie," was a sweet little dog, all of nine pounds, who did not cause any genuine significant disturbances or problems to any of TDM's residents. Her presence did not impose an undue financial and administrative burden on TDM, nor did her presence fundamentally alter the nature of TDM's operations.

22. From September, 2011 through November, 2012, Sergey Peklun benefited from the reasonable accommodation TDM had granted him.

23. Nonetheless, the Board of TDM carelessly and negligently breached its duty to honor and protect the reasonable accommodation it had given Mr. Peklun by:

   a. Failing to maintain proper records regarding its business operations, and specifically by failing to record and clearly and permanently document and publish its 2011 decision to grant a reasonable accommodation to Sergey Peklun by which he was permitted to keep Julia in his condominium unit;

   b. Creating, allowing or contributing to confusion and uncertainty as to Julia's status at TDM, such that another resident mistakenly believed that Sergey Peklun lacked the legal right to keep Julia with him, when in fact, he had been given that right, for good cause, in 2011;

   c. Mistakenly sending a Notice of Violation to Sergey Peklun on or about November 27, 2012, accusing him of violating its no pet rule and on or about February 21, 2013, wrongfully demanding that Sergey Peklun seek a recertification of the earlier accommodation;

d. Failing to appropriately document and maintain a record of the medical evidence submitted by Mr. Peklun, which showed that without Julia, "there is a danger of respiratory arrest and respiratory failure compounding his other medical conditions" and that an emotional support/service animal was medically necessary to alleviate harmful stress which compounded his medical conditions;

e. Failing to alert a new property management company that took over in the spring of 2013, that Sergey Peklun had been given a reasonable accommodation in 2011;

f. Failing to advise other TDM residents, including one Frank Speciale, that Sergey Peklun had been given a reasonable accommodation in 2011;

g. Contributing to Mr. Speciale's mistaken belief that he had a bona fide legal basis for suing Sergey Peklun and Viktoria Peklun for injunctive relief and damages;

h. Preparing, through one or more of its officers, documents that incorrectly inferred that no accommodation had ever been given to Sergey Peklun and that Sergey Peklun was in violation of TDM's no-pet rule, which documents contributed substantially to a judge's decision to grant an injunction, ordering Sergey Peklun to get rid of Julia; and

i. Otherwise negligently allowing the reasonable accommodation it had given Sergey Peklun in 2011 to be ignored, questioned, challenged, undermined and ultimately destroyed.

24. As a direct and proximate result of defendants' negligence, Sergey Peklun and Viktoria Peklun were forced to incur reasonable costs and attorney's fees in defending the lawsuit filed against them in county court by Frank Speciale.

25. As a direct and proximate result of defendants' negligence, Sergey Peklun was ordered to get rid of Julia. He became convinced he was going to lose his beloved Julia forever, which caused the predicted enhancement of his physical and emotional problems, including increased stress, depression, anxiety and despair.

26. As a direct and proximate result of the defendants' negligence, Mr. Peklun was humiliated and became increasingly distraught and despondent until, on February 12, 2015, he took his own life.

27. Sergey Peklun's suicide was a reasonably foreseeable consequence of TDM's actions and omissions.

28. As a result of her husband's death, Viktoria Peklun suffered the loss of his support and services and his companionship. These losses are permanent or continuing and she will suffer the losses in the future.

29. As a result of her husband's death, Viktoria Peklun sustained mental pain and suffering. Her losses are permanent or continuing and she will suffer the losses in the future.

30. As a result of Sergey Peklun's death, funeral and burial expenses were incurred that have become a charge against his estate or were paid by or on behalf of the decedent.

**WHEREFORE**, the plaintiff demands judgment against the defendants for costs

and damages, including costs and attorney's fees incurred in the county court case of *Speciale v. Peklun*, and such other and further relief as the court may deem appropriate.

Further, Plaintiff demands trial by jury of all issues so triable.

## COUNT II – NEGLIGENCE – SURVIVOR CLAIMS

All preliminary allegations are re-asserted and in addition, Plaintiff alleges:

31.     As a direct and proximate result of the Defendants' breach of duty, as alleged in paragraph 23 above, SERGEY PEKLUN suffered humiliation, mental anguish, inconvenience, loss of capacity for the enjoyment of life, and aggravation of one or more previously existing conditions.

32.     Additionally, the Defendant's negligence caused SERGEY PEKLUN to incur the reasonable value or expense of hospitalization and medical and nursing care and treatment he necessarily or reasonably obtained between November 27, 2012 and the moment of his death on February 12, 2015.

33.     As a direct and proximate result of the defendants' negligence, Sergey Peklun was forced to incur reasonable costs and attorney's fees in defending the lawsuit filed against him in county court by Frank Speciale, as described hereinabove.

34.     As a direct and proximate result of the Defendant's breach of duty, as alleged in paragraph 23, VIKTORIA PEKLUN suffered a loss, (by reason of the injuries to her husband that were caused by the incidents in question), of her husband's services, comfort, society and attentions between November 27, 2012 and the moment of his death on February 12, 2015.

**WHEREFORE**, Plaintiff, ALEXANDER PEKLUN, as Personal Representative of the Estate of Sergey Peklun, deceased, demands judgment against the Defendants for damages, court costs, and such other and further relief as the Court deems just and proper. Plaintiff demands trial by jury on all issues so triable.

### COUNT III – DISCRIMINATION IN VIOLATION OF THE FEDERAL and FLORIDA FAIR HOUSING ACTS

All preliminary allegations are re-asserted and in addition, Plaintiff alleges:

35. This action is brought pursuant to the provisions of the Fair Housing Act, 42 U.S.C. Section 3601, et seq., and the Florida Fair Housing Act, Section 760.20, et. seq. (the Acts).

36. At certain times material hereto, Defendant Maria Verduce was a board member and officer of Tierra del Mar Condominium Association, Inc. (TDM). She resides in Palm Beach County, Florida and is otherwise sui juris.

37. TDM is operated by a Board of Directors, which included, at certain material times, Defendant, MARIA VERDUCE. During her tenure on the board, and as treasurer and then as president, Ms. Verduce was personally involved in the discriminatory acts described herein. As such, each reference to TDM herein also applies to and includes Defendant, MARIA VERDUCE.

38. The Acts forbid discrimination in the form of a refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person equal opportunity to use and enjoy a dwelling.

39. Prior to his death and at all times material hereto, SERGEY PEKLUN was a unit owner and resident at TDM, who was disabled as defined in the Fair Housing Act. He suffered from a variety of serious health issues, including heart disease, kidney

disease, lung disease, sleep apnea, anxiety and depression. He had been determined to be 100% disabled by the Social Security Administration.

40. Plaintiff specifically alleges that the Defendants discriminated against Sergey Peklun because of his disabilities and in doing so, denied him an equal opportunity to use and enjoy his dwelling.

41. In 2011, Sergey Peklun acquired a small dog named Julia who provided him with important emotional support and assistance in coping with his physical and emotional disabilities and thus afforded him an equal opportunity to use and enjoy his dwelling.

42. Sergey's dog, Julia, was an Emotional Support Animal, as defined under Fair Housing Act guidelines.

43. Accordingly, Sergey Peklun applied to TDM's board for a reasonable accommodation so that he would be permitted to keep Julia with him.

44. The accommodation requested by Sergey Peklun did not impose an undue financial or administrative burden on TDM, nor did it fundamentally alter the nature of TDM's operations, which was to provide housing.

45. Allowing a disabled person to keep a dog in a housing unit with a no-pets policy was a reasonable accommodation under the facts of this case.

46. In the fall of 2011, the Board granted the requested accommodation but failed to make a sufficient record of this accommodation such that persons inquiring about it in subsequent years were unable to confirm its existence.

47. As a result, certain other residents were given the mistaken impression

that no such accommodation existed and that Sergey Peklun's possession of Julia, in an otherwise no-pet condominium, was unlawful.

48. Certain members of TDM's board, with authority to speak on behalf of the Board, wrongfully sought to impose additional conditions on Sergey Peklun's right to possess Julia, wrongfully challenged the status of his accommodation, wrongfully participated in efforts to strip him of his beloved companion, wrongfully contributed to the efforts of others to impair, defeat, overcome, reverse or simply ignore his accommodation, and otherwise wrongfully caused Sergey Peklun to fear that he would lose the right to have Julia continue to live with him.

49. Various actions taken against Sergey Peklun by TDM (through one or more of its officers and representatives, including Ms. Verduce) amounted to harassment and discrimination against Sergey Peklun and his housing rights.

50. The Defendants' acts and omissions had the effect of creating a reasonable fear in Sergey Peklun that TDM's failure to keep accurate records documenting the accommodation given to him in 2011, and its subsequent conduct inconsistent with the existence of the accommodation, could and likely would result in the reversal of that reasonable accommodation and a corresponding obligation on his part to remove Julia from his property.

51. On September 26, 2013, Sergey Peklun filed a Housing Discrimination Complaint with the Palm Beach County Office of Equal Opportunity, (PBCOEO) which was dual filed with HUD on October 21, 2013, alleging that he was injured by TDM's discriminatory act. He alleged a violation of Palm Beach County Code Section 15-

58(12) and Section 804f3B of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Act of 1988.

52. On May 5, 2014, PBEO issued the attached Notice of Determination of Reasonable Grounds, finding and concluding, and Plaintiff herein alleges, that Sergey Peklun had a disability as defined by fair housing laws, that his request for a reasonable accommodation had been granted in 2011, that upon changing management companies in 2013, TDM wrongfully required Sergey Peklun to "re-certify" his request for a reasonable accommodation, that TDM initially wrongfully denied his repeated request, that TDM wrongfully failed to follow its own reasonable accommodation policy by requiring Sergey Peklun to re-apply, and wrongfully failed to fully engage in the interactive process despite knowing of his disability.

53. PBEO specifically found and concluded, and Plaintiffs herein allege, that Julia ameliorated many of the effects of Sergey Peklun's medical conditions including hypertension, chronic renal failure, anxiety, depression and sleep apnea.

54. PBEO specifically found and concluded, and Plaintiffs herein allege, that Julia was very important to Sergey Peklun's support system and his ability to use and enjoy his dwelling and was a necessary, reasonable accommodation.

55. PBEO specifically found and concluded, and Plaintiffs herein allege, that TDM continued to request additional information from Sergey Peklun, issued violation notices and even filed an arbitration action against him seeking to have Julia removed, and otherwise wrongfully ignored the original accommodation and then wrongfully required and denied his repeated or renewed request for a reasonable accommodation

despite having sufficient information to honor both the original accommodation and/or his second request.

56. PBEO specifically found and concluded, and Plaintiffs herein allege, that there were reasonable grounds to believe that TDM discriminated against Sergey Peklun on the basis of his disability.

57. The Fair Housing Act and Palm Beach County's Fair Housing Ordinance authorize the filing of this civil action.

58. Additionally, one or more of TDM's board members wrongfully provided support to another resident of TDM who sued Sergey and Viktoria Peklun for an injunction requiring them to get rid of Julia and for damages.

59. Sergey and Viktoria Peklun were forced to engage an attorney to defend that lawsuit and are obligated to pay their attorney a reasonable fee.

60. Plaintiffs have retained counsel to prosecute this case and are obligated to pay their attorneys a reasonable fee.

WHEREFORE, Plaintiff demands judgment for damages against the Defendants for compensatory and punitive damages and for attorney's fees and costs. Plaintiff further demands a trial by jury on all issues so triable.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent by electronic eservice this _____ day of April, 2015, to: PETER E. S. WALLIS, ESQ., 1937 East Atlantic Boulevard, Suite 104, Pompano Beach, FL 33060, peter@wallisandwallis.net; peter@jmwallis.com, Andrew M. Schwartz, Esq., 4755 Technology Way, Suite 103, Boca Raton, FL 33431, ams@amslaw.biz; cs@amslaw.biz, cac@amslaw.biz; cmp@amslaw.biz, receptionist@amslaw.biz, and to

DAVID B. ISRAEL, ESQ., 12555 Orange Drive, Suite 4023, Davie, FL 33330-4304, disrael@israellawfl.com.

By: s/ Jack Sobel
**JACK SOBEL**
Attorney Email: JSobel@schwedlawfirm.com
**Eservice Email: eservice@schwedlawfirm.com**
Bar Number: 240869
Attorneys for the Plaintiff
Schwed, Adams, Sobel, & McGinley, P.A.
7111 Fairway Drive, Suite 105
Palm Beach Gardens, Florida 33418
Telephone: (561) 694-6079
Facsimile: (561) 694-6089